The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Bobby L. BAKER, Defendant–Appellant.

No. 04CA0514.

Colorado Court of Appeals, Div. V.

Oct. 4, 2007.

Rehearing Denied March 6, 2008.

John W. Suthers, Attorney General, Cheryl Hone Canaday, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

This appeal raises an issue of first impression as to whether a defendant's conviction of extreme indifference first degree assault can stand where the defendant's conduct was directed at a single individual. We conclude the extreme indifference first degree assault statute, § 18–3–202(1)(c), C.R.S.2007, contains no requirement that universal malice be proved, and therefore a conviction for extreme indifference first degree assault may be upheld where the defendant's conduct is directed at a single individual. We further address defendant's challenges to his convictions, aggravation of the offenses, and his sentencing.

Defendant, Bobby L. Baker, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree assault, second degree kidnapping, and five counts of sexual assault. He also appeals the sentence imposed. We vacate the jury's finding of the class three felony aggravator under section 18–3–402(4)(c), C.R.S.2007, as to one sexual assault count, and we affirm the judgment and sentence in all other respects.

## I. Factual Background

The sixteen-year-old victim lived with her grandmother and with defendant, who is her step-grandfather. In February 2001, while defendant and the victim were home alone together, defendant convinced the victim to take two sleeping pills with a beverage containing wine. He then picked up the victim and carried her to his bedroom, where he dropped her on the bed and twisted her arm behind her back. When the victim resisted, defendant manually choked her until she lost consciousness.

When she regained consciousness, she was on her back on defendant's bed, with a rope binding her hands behind her back and also tied around her neck. Defendant told the victim that if she screamed, yelled, or resisted, he would kill her. When she screamed, defendant choked her by pressing a pillow in her face, telling her that he would only let go if she stopped screaming. He then sexually assaulted her. After the assault, defendant removed the rope, and told her that if she told anyone about what had happened, he would kill her and her entire family.

As a result of the assault, the victim suffered severe bruising around her neck, severe hemorrhaging of the blood vessels in her eyes, and injury to her genitals.

Following a jury trial, defendant was found guilty of extreme indifference first degree assault, second degree kidnapping of a victim of a sexual assault, and five counts of sexual assault, including two aggravated counts: one for causing submission of the victim by threats of imminent harm and one for causing her submission by threats of future harm. Defendant was sentenced to consecutive twenty-four-year terms in the Department of Corrections for the first degree assault and second degree kidnapping counts, and a consecutive sentence of twenty-four years to life imprisonment for the sexual assaults, plus mandatory parole of twenty years to life.

## II. Extreme Indifference First Degree Assault

Defendant contends his conviction for extreme indifference first degree assault must be vacated because (1) extreme indifference assault, like first degree extreme indifference murder, requires proof of universal malice against human life "generally," and not conduct directed against a single individual; and (2) his conduct was directed at a single individual. We are not persuaded.

The interpretation of statutes is a question of law subject to de novo review. *People v. Frazier,* 77 P.3d 838, 839 (Colo. App.2003), *aff'd,* 90 P.3d 807 (Colo.2004).

Defendant was convicted of first degree extreme indifference assault. The elements of this crime are:

A person commits the crime of assault in the first degree if:

. . .

(c) [u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to

another person, and thereby causes serious bodily injury to any person. . . .

§ 18–3–202(1)(c).

■ We disagree that first degree extreme indifference assault contains a requirement of universal malice. The assault statute does not contain the phrase "universal malice." Furthermore, the concept of "universal malice" in the murder statute is based on the distinct history of that statute. Because a similar history does not exist regarding the assault statute, we conclude that the assault statute contains no universal malice requirement.

As the statute defining first degree extreme indifference murder existed in 1971, it was strikingly similar to the current first degree extreme indifference assault statute. The 1971 statute provided that a person committed the crime of first degree extreme indifference murder if, "under circumstances manifesting extreme indifference to the value of human life, he intentionally engage[d] in conduct which create[d] a grave risk of death to a person other than himself, and thereby cause[d] the death of another." Ch. 121, sec. 1, § 40–3–102(1)(d), 1971 Colo. Sess. Laws at 418.

The supreme court interpreted the 1971 version of the statute in *People v. Jones*, 193 Colo. 250, 565 P.2d 1333 (1977), and rejected the defendant's argument in that case, that the only way to distinguish first degree extreme indifference murder from criminally negligent homicide was to include universal malice in the culpability required for murder. The supreme court stated:

> To agree with the defendant, we would have to construe section (1)(d) of the first-degree murder statute as prohibiting conduct that greatly endangers many people as opposed to a single person. The statute is not that exclusive; in fact, it refers to "conduct which creates a grave risk of death to a person. . . ."

*Id.* at 254, 565 P.2d at 1336.

In 1977, the statute was amended by substituting "knowingly" for "intentionally" as the applicable mens rea for the crime. *People v. Jefferson*, 748 P.2d 1223, 1229 (Colo. 1988). However, the supreme court in *People v. Marcy*, 628 P.2d 69, 79 (Colo.1981), held that the 1977 version of the statute violated the equal protection of the laws under article II, section 25 of the Colorado Constitution because it was not reasonably distinguishable from the statutory definition of murder in the second degree. *See Jefferson*, 748 P.2d at 1229.

In 1981, the General Assembly adopted an amended version of first degree extreme indifference murder, which is still in effect today, and provides:

> (1) A person commits the crime of murder in the first degree if:
>
> . . .
>
> (d) Under circumstances *evidencing an attitude of universal malice* manifesting extreme indifference to the value of human life *generally*, he knowingly engages in conduct which creates a grave risk of death to a person, *or persons*, other than himself, and thereby causes the death of another. . . .

§ 18–3–102, C.R.S.2007 (emphasis reflects 1981 changes).

The added language reflected the General Assembly's intent to limit the application of first degree extreme indifference murder to situations in which the defendant demonstrates an indifference to human life generally, as distinguished from indifference to, or willingness to take, a particular human life. *Jefferson*, 748 P.2d at 1232 (upholding amended version as sufficiently different from second degree murder as to not violate equal protection); *see also Candelaria v. People*, 148 P.3d 178, 181–82 (Colo.2006).

Comparing the extreme indifference first degree murder statute as it exists now and as it existed when *Jones* was decided, it is clear that the requirement that a defendant act with "a willingness to take human life indiscriminately, without knowing or caring who the victim may be," *id.* at 181, was not an element of extreme indifference first degree murder until section 18–3–102 was amended in 1981 to add the phrase "universal malice."

Like the 1971 extreme indifference first degree murder statute analyzed in *Jones*, and unlike the current version of that stat-

ute, section 18–3–202(1)(c) defining extreme indifference first degree assault does not include "universal malice" as an element of the crime. Moreover, section 18–3–202(1)(c), like the statute analyzed in *Jones,* specifically references conduct "which creates a grave risk of death to another person." *See Jones,* 193 Colo. at 254, 565 P.2d at 1336. Because of the distinctions between the current extreme indifference first degree murder and assault statutes, we conclude that a finding of "universal malice" was not required for the jury to convict defendant of extreme indifference first degree assault under section 18–3–202.

### III. Evidence of Other Bad Acts

Defendant contends the trial court erred when it admitted evidence that, seven years before the sexual assault charged here, he committed a sexual assault on a different victim in New Mexico. We disagree.

### A. Legal Underpinnings

■ The General Assembly has declared that, in the prosecution of sex offenses, "evidence of other sexual acts [of the defendant] is typically relevant and highly probative, and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice." § 16–10–301(1), C.R.S.2007. Introduction of other acts evidence must comport with CRE 404(b), and must not infringe upon the defendant's constitutional due process rights. *See People v. Rath,* 44 P.3d 1033, 1037–38 (Colo.2002).

Section 16–10–301(3), C.R.S.2007, provides, in relevant part: "The prosecution may introduce evidence of other acts of the defendant to prove the commission of the offense as charged for any purpose other than propensity, including: Refuting defenses, such as consent or recent fabrication; showing a common plan, scheme, design, or modus operandi...."

To introduce such evidence, the prosecution must follow the procedures in section 16–10–301(4), C.R.S.2007:

(a) The prosecution shall advise the trial court and the defendant in advance of trial of the other act or acts and the purpose or purposes for which the evidence is offered.

(b) The trial court shall determine by a preponderance of the evidence whether the other act occurred and whether the purpose is proper under the broad inclusionary expectations of this section.

. . . .

(d) The trial court shall, at the time of the reception into evidence of other acts and again in the general charge to the jury, direct the jury as to the limited purpose or purposes for which the evidence is admitted and for which the jury may consider it.

### B. Evidentiary Hearing Under Section 16–10–301

■ Defendant argues the court abused its discretion when it found by a preponderance of the evidence that the New Mexico sexual assault occurred, because "it permitted the prosecution to present testimony on direct examination, yet did not provide defense counsel an opportunity to cross-examine this witness on the critical issue of the credibility of her claim." We disagree.

Under section 16–10–301(3), the trial court was required to determine by a preponderance of the evidence whether the other act had occurred and whether defendant had committed the act. The court was permitted to make that determination based upon an offer of proof. § 16–10–301(4)(c), C.R.S.2007; *see People v. Moore,* 117 P.3d 1, 3 (Colo.App. 2004) (requirement under statute requiring proof by a preponderance of evidence that prior acts of domestic violence occurred was met by giving parties opportunity to make offers of proof) (citing *People v. Groves,* 854 P.2d 1310, 1313 (Colo.App.1992) (evidentiary hearing was not required where parties had opportunity to present offers of proof as to other acts evidence)).

Here, the People made an offer of proof in the form of the testimony of T.P., who testified to details of the New Mexico assault, and identified defendant as the person who sexually assaulted her. At the end of the hearing, the trial court found:

[B]ased upon the testimony of [T.P.] this afternoon and my assessment of her credibility and my assessment of the sufficiency,

probative effect and weight of the evidence and offer of proof for the purposes of this decision as well as the reasonable inferences and reasonable conclusion that I drew from my assessment of that evidence and credibility of [T.P.], I conclude for the purposes of this statute 16–10–301 that there is a preponderance of the evidence that the act as described by [T.P.] occurred.

We conclude the trial court's findings are supported by the record and are not clearly erroneous.

■ Defendant argues that he should have been entitled to cross-examine T.P. during the evidentiary hearing. He does not cite, nor are we aware of, any authority that requires a trial court to allow cross-examination of a witness during a section 16–10–301 evidentiary hearing. As noted above, section 16–10–301(4)(c) permitted the court to make its admissibility determination by offer of proof. Offers of proof are often perfunctory, and typically, no opportunity is given for cross-examination. *See People v. Lanari*, 926 P.2d 116, 121 (Colo.App.1996) (psychiatrist's written offer of proof was relied upon to determine admissibility of expert testimony). We therefore conclude the trial court did not abuse its discretion when it found the assault on T.P. had occurred without providing an opportunity for defendant to cross-examine her.

### C. The *Spoto* Test

■ Defendant also argues that the trial court abused its discretion when it admitted evidence of the New Mexico sexual assault because it violated CRE 404(b) and the test enumerated in *People v. Spoto*, 795 P.2d 1314 (Colo.1990). We are not persuaded.

■ In order to introduce evidence of other sexual acts committed by the defendant, in addition to satisfying the requirements of section 16–10–301, the prosecution also must satisfy CRE 404(b) and the four-part *Spoto* test. *Rath*, 44 P.3d at 1038–39. CRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The *Spoto* test requires that (1) the proffered evidence relate to a material fact; (2) the evidence be logically relevant; (3) the logical relevance be independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character and acted in conformity with such bad character; and (4) the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice. *People v. Underwood*, 53 P.3d 765, 769 (Colo.App.2002) (citing *Spoto*, 795 P.2d at 1318).

■ The decision whether to admit such evidence is within the sound discretion of the trial court and will be upheld absent an abuse of discretion. *Underwood*, 53 P.3d at 769.

The trial court ruled that evidence of the New Mexico sexual assault was admissible under CRE 404(b) because it was "relevant to the identity of [defendant] as the person who committed the act on [the victim,] [and] his capability of committing it." These are permitted criteria for the admission of the evidence under CRE 404(b). *See Rath*, 44 P.3d at 1040 ("Generally, in a criminal prosecution the ultimate facts or elements consist of showing that the accused committed the guilty act, sometimes described as the 'identity' of the accused, and that he did so with the required intent or state of mind and without legal excuse or justification." (footnote omitted)).

The court also engaged in a thorough *Spoto* analysis, and found that the evidence of the New Mexico sexual assault (1) was related to the material fact of the identity of defendant; (2) was relevant to the identity of defendant and his capability to commit the act; and (3) was independent of the intermediate inference of bad character because the evidence was probative of a common plan, design, or modus operandi, citing nine similarities between the New Mexico sexual assault and the facts alleged in the assault on the victim here. The court found that the probative value of the evidence was not sub-

stantially outweighed by the danger of unfair prejudice because it could tend to show whether defendant committed the crime against the victim. These findings are supported by the record, and we will not disturb them on appeal. *See Rath*, 44 P.3d at 1043 (evaluating similarities between prior acts and crime charged, and balancing against potential for unfair prejudice).

Furthermore, the court properly instructed the jury, both before and after the testimony about the New Mexico sexual assault, that the evidence was only to be considered for the limited purpose of showing the identity of the perpetrator or for showing a common plan, scheme, design, method, or operation, and could not be considered to show that, because of some transaction in the past, the crime for which defendant was now on trial was committed. *See* § 16–10–301(4)(d).

We therefore conclude the trial court's admission of evidence of the New Mexico sexual assault did not violate CRE 404(b) or the *Spoto* test.

### IV. Recross–Examination Concerning Other Acts Evidence

■ Defendant next contends that his rights under the United States and Colorado Constitutions were violated when the trial court denied him the ability to recross-examine one of the prosecution's witnesses, a retired sheriff's deputy, who testified about his investigation of the New Mexico sexual assault on T.P. We disagree.

During direct examination, the deputy testified that on the day following the assault, T.P. had bruising and a "real bad black eye." On cross-examination, he stated that he had thought the black eye might have been more than twenty-four hours old. However, in response to a question from defense counsel, in which it was implied that the deputy was not able to determine the cause of "that bruise that was over twenty-four hours old," the deputy disagreed with that implication, and said that, through further investigation, he had in fact been able to determine when the bruising took place. Defense counsel did not follow up that answer with further inquiry on the subject.

On redirect examination, the deputy testified that he had interviewed a witness who, earlier on the night of the assault, had observed the victim and defendant in the bar where the witness was working as a bartender. Because the witness had not noticed the bruising at that time, and the injuries were of such a nature that "there was no way [the bartender] could have missed" them, the deputy concluded the bruising could not have been present before the assault. Defense counsel sought the opportunity for recross-examination, but the trial court refused.

■ "A defendant's right to confront the witnesses against him is guaranteed by both the Sixth Amendment of the United States Constitution and article II, section 16 of the Colorado Constitution." *People v. Fry*, 92 P.3d 970, 974 (Colo.2004). The right of confrontation requires that the defendant be given an opportunity for effective cross-examination. *Merritt v. People*, 842 P.2d 162, 166 (Colo.1992) (citing *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)).

■ "When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters." *United States v. Riggi*, 951 F.2d 1368, 1375 (3d Cir.1991). However, once a party has had an opportunity to substantially exercise the right of cross-examination, courts have discretion to limit recross-examination when no new matters have been raised on redirect or additional testimony would be only marginally relevant. *People v. Kerber*, 64 P.3d 930, 932 (Colo.App.2002), *disapproved of on other grounds by Domingo–Gomez v. People*, 125 P.3d 1043 (Colo.2005); *see Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (trial court has wide latitude to impose reasonable limits on cross-examination based on concerns such as harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant); *Vega v. People*, 893 P.2d 107, 118 (Colo.1995) (same).

Absent an abuse of discretion, a trial court's ruling limiting the scope of recross-examination will not be disturbed on review. *See Vega,* 893 P.2d at 118; *People v. Harris,* 762 P.2d 651, 660 (Colo.1988).

Here, when the deputy indicated on cross-examination that he had been able, through investigation, to determine the time of bruising, defense counsel failed to follow up that testimony with further questioning, although the opportunity was presented. Therefore, redirect examination did not raise a material new matter that required recross-examination, and the trial court did not abuse its discretion by declining to grant defendant an opportunity to conduct recross-examination.

## V. Sufficiency of the Evidence

Defendant contends the evidence is insufficient to support (1) the first degree assault conviction and the related class two felony aggravator for sexual assault; and (2) the class three felony aggravator for one of the counts of sexual assault. We conclude the evidence is sufficient with respect to the first issue, but is insufficient with respect to the second.

Where the sufficiency of the evidence is challenged on appeal, a reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945, 951 (Colo.1988); *People v. Valdez,* 56 P.3d 1148, 1151 (Colo.App.2002). The evidence, whether direct or circumstantial, must be both substantial and sufficient to support the determination of guilt. *Valdez,* 56 P.3d at 1151.

### A. Serious Bodily Injury

Defendant contends his first degree assault conviction, and the related class two felony aggravator for sexual assault, must both be vacated because the evidence failed to establish "serious bodily injury." We disagree.

"Serious bodily injury" is "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, [or] a substantial risk of protracted loss or impairment of the function of any part or organ of the body." § 18–1–901(3)(p), C.R.S.2007.

Whether an injury qualifies as a "serious bodily injury" is a question of fact for the jury. *See People v. Watkins,* 196 Colo. 377, 380, 586 P.2d 43, 45–46 (1978); *People v. Brown,* 677 P.2d 406, 409 (Colo. App.1983).

Here, the prosecution presented evidence that the victim was choked both manually and with a rope, lost consciousness at least once, and had bruises on her neck. The doctor who examined her shortly after the sexual assault testified that (1) the victim had a "tremendous amount of hemorrhage on the white part of [her] eyes with bruising around the eyes, the orbital region"; (2) the injuries were consistent with being choked with a rope; (3) choking of this type can cause loss of consciousness or death; and (4) in his opinion, the victim suffered serious bodily injury. *See State v. Sorrell,* 152 Vt. 543, 568 A.2d 376, 378 (1989) (choking and causing the victim to lose consciousness were sufficient to show serious bodily injury).

Viewing the evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence to support a jury finding that the victim suffered serious bodily injury. As a result, the evidence was sufficient to establish commission of first degree assault under section 18–3–202(1)(c) and the class two felony aggravator under section 18–3–402(5)(a), C.R.S.2007.

### B. Class Three Felony Aggravator

Defendant contends his conviction of the class three felony aggravator for sexual assault must be vacated because the evidence did not establish that he caused the submission of the victim by threatening to retaliate in the future. We agree.

Under section 18–3–402(4)(c), a sexual assault is a class three felony if the actor "causes submission of the victim by threatening to retaliate in the future against the victim, or any other person, and the victim

reasonably believes that the actor will execute this threat"; and " 'to retaliate' includes threats of kidnapping, death, serious bodily injury, or extreme pain."

Here, there was evidence that defendant threatened to kill the victim if she did not stop screaming and that this caused her submission. However, threats of future retaliation were not made until *after* the assault, and therefore did not cause her submission.

The People concede the evidence may have been insufficient to establish the class three aggravator under § 18–3–402(4)(c).

Because we conclude the evidence was insufficient to support the jury's finding of the class three felony aggravator under that statute, we vacate that finding.

## VI.  Merger of Offenses

■ Defendant contends his sexual assault conviction must merge into his second degree kidnapping conviction. We disagree.

Section 18–3–302(3)(a), C.R.S.2007, states that second degree kidnapping is a class two felony if the *person kidnapped is a victim of a sexual offense.* Defendant contends that, because section 18–3–302(3)(a) specifies sexual assault as a sentence enhancer for kidnapping, the statutory elements of sexual assault are included within the statutory elements of kidnapping, and thus, unless the lesser sexual assault conviction is merged into his conviction of the greater offense of kidnapping, he will suffer double jeopardy.

Defendant's argument was considered and rejected by the supreme court in *People v. Henderson,* 810 P.2d 1058, 1061–63 (Colo. 1991) (sexual assault is not a lesser included offense of second degree kidnapping involving sexual assault). Nevertheless, he contends that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny have drawn the Fifth Amendment double jeopardy analysis of *Henderson* into question. Citing language from *Sattazahn v. Pennsylvania,* 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (Scalia, J., writing for a three-justice plurality), and *Schriro v. Summerlin,* 542 U.S. 348, 354, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), he argues that, if a crime is used

as a sentence enhancer for a secondary crime, the enhancing crime is an element of the secondary crime, and thus is a lesser included offense. We are not persuaded.

Neither *Sattazahn* nor *Schriro* held that a sentence enhancing crime is a lesser included offense of the crime it enhances. Therefore, defendant's right to be free from double jeopardy is not implicated here. In any event, we are bound by *Henderson. See also People v. Hogan,* 114 P.3d 42, 57–58 (Colo. App.2004) (rejecting similar argument with respect to merger of aggravated robbery and kidnapping convictions, and noting that a sentence enhancement factor is not a substantive element of the charged offense).

## VII.  Assertion of Innocence

■ Defendant contends the trial court impermissibly used his assertion of innocence as an aggravating factor when imposing his sentence. We are not persuaded.

■ If a defendant maintains his innocence and invokes his right against self-incrimination both at trial and at sentencing, a trial court cannot constitutionally consider his lack of an expression of remorse as an aggravating circumstance. *People v. Young,* 987 P.2d 889, 894 (Colo.App.1999). However, when a defendant who has not testified at trial elects to testify at his or her sentencing hearing, the court can consider what the defendant does or does not say for purposes of imposing sentence. *People v. Villarreal,* 131 P.3d 1119, 1129 (Colo.App.2005); *see also People v. Gagnon,* 997 P.2d 1278, 1284 (Colo. App.1999) (sentencing court may take into account the defendant's lack of remorse and lack of acceptance of responsibility in assessing potential for rehabilitation).

Here, defendant did not testify at trial. However, he did address the trial court during his sentencing hearing. At that time, he did not acknowledge that he committed the crime, and did not apologize or express sympathy or remorse. Therefore, such consideration by the court was proper. *See Villarreal,* 131 P.3d at 1129.

## VIII.   Lifetime Supervision Act

Finally, defendant contends the Colorado Lifetime Supervision Act of 1998 under which he was sentenced is unconstitutional, and therefore his sentences must be vacated. However, defendant acknowledges this issue was not raised in the trial court, and we decline to address it here. *See People v. Lesney,* 855 P.2d 1364 (Colo.1993) (to preserve for appellate review a claim that a statute is unconstitutional, it must be presented to the trial court); *People v. McNeely,* 68 P.3d 540 (Colo.App.2002) (same); *see also People v. Cagle,* 751 P.2d 614 (Colo.1988) (we will not consider constitutional issues raised for the first time on appeal).

The judgment is vacated as to the jury's finding of the class three felony aggravator under section 18–3–402(4)(c). The judgment and sentence are affirmed in all other respects.

Judge DAILEY and Judge CARPARELLI concur.