2015 COA 47

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Evelin CAMPOS, Defendant–Appellant.**

**Court of Appeals No. 14CA0125**

Colorado Court of Appeals,
Div. VI.

Announced April 23, 2015

**554**

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Borquez Law Office, Robert P. Borquez, Denver, Colorado; Law Office of Mark Burton, P.C., K. Mark Burton, Denver, Colorado, for Defendant–Appellant.

Opinion by CHIEF JUDGE LOEB

¶ 1 Defendant, Evelin Campos, appeals the judgment of conviction entered on jury verdicts finding her guilty of identity theft and criminal impersonation. We affirm.

## I.   Background

¶ 2 This case involves the unauthorized use of another person's name and social security number for employment purposes. S.A. discovered that several people, including Campos, were using her personal identifying information after the Internal Revenue Service sent her letters regarding earnings reported under her social security number at jobs where she had not worked. S.A.'s application for Medicaid benefits was also denied based on supposedly excessive income. S.A. reported the matter to the police.

¶ 3 A police investigator discovered that an employee of ABM Janitorial Services had been receiving paychecks under the name "S.A." for approximately four years. Juan Martinez, an ABM manager who was familiar with "S.A.," accompanied the investigator to meet the employee at her worksite. When confronted by the investigator, the employee admitted that her name was not "S.A.," but was instead Evelin Campos. Campos was charged with identity theft, criminal impersonation, and two counts of forgery related to her hiring paperwork.

¶ 4 At trial, Campos claimed that she was one of many undocumented workers that Martinez provided with false identity in order to work for ABM. She argued that she did not forge the initial hiring paperwork because she began working for ABM a year after that paperwork was filed.

¶ 5 The jury convicted Campos of identity theft and criminal impersonation but acquitted her of the two forgery counts. The court sentenced Campos to two years supervised probation and entered judgment accordingly.

¶ 6 This appeal followed.

## II.   Sufficiency of the Evidence—
## Identity Theft

¶ 7 Campos first contends that the evidence at trial was insufficient to convict her of identity theft. Specifically, she argues that there was insufficient evidence that she used S.A.'s identity to "obtain cash, credit, property, services, or any other thing of value" as required under the identity theft statute, because she only did so to obtain employment. § 18–5–902(1)(a), C.R.S. 2014. We conclude that because employment is a "thing of value" within the meaning of the identity theft statute, the evidence was sufficient to sustain the conviction.

¶ 8 Campos raised this contention at trial when she moved for a judgment of acquittal on the identity theft charge after the prosecution's case-in-chief, after the defense rested, and after the jury rendered its verdicts. The trial court denied the motions, ruling that the wages Campos received constituted

"cash" for purposes of the identity theft statute. We affirm but we do so based on a different analysis of the statute. *See Premier Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 9, 312 P.3d 276 ("We may affirm a trial court's ruling on any ground that is supported by the record.").

## A. Standard of Review

¶ 9 We review de novo whether the evidence before the jury was sufficient both in quantity and quality to sustain a conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). We must determine " 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.' " *Id.* (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). In our analysis, we must give the People the benefit of every reasonable inference that may be fairly drawn from the evidence. *Id.* at 1292. The credibility of witnesses and the weight to be accorded to various pieces of evidence rest solely within the province of the jury. *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999).

¶ 10 Here, Campos' sufficiency of the evidence contention turns on a question of statutory interpretation. Statutory interpretation is a question of law that we review de novo. *A.S. v. People*, 2013 CO 63, ¶ 10, 312 P.3d 168.

## B. Analysis

¶ 11 Campos was charged with identity theft under section 18–5902(1)(a), which provides:

A person commits identity theft if he or she:

(a) Knowingly uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or *any other thing of value* or to make a financial payment.

(Emphasis added.)

¶ 12 On appeal, Campos does not dispute that she knowingly used personal identifying information of another, namely S.A. Indeed, the identity theft statute specifically defines "personal identifying information" to include a name and social security number. § 18–5901(13), C.R.S. 2014. Campos also does not dispute that her use of S.A.'s identifying information was without permission or lawful authority. The only disputed issue on appeal is whether, by using this information to obtain employment, Campos obtained a "thing of value" within the meaning of section 18–5–902(1)(a). This is an issue of first impression in Colorado.[1]

¶ 13 In *People v. Beck*, 187 P.3d 1125, 1128–29 (Colo. App. 2008), a division of this court used the doctrine of *ejusdem generis* to interpret the phrase "thing of value" in the identity theft statute to hold that another person's driving record was not a "thing of value" within the meaning of section 18–5–902(1)(a).

¶ 14 The division in *Beck* first declined to apply the broad statutory definition of "thing of value" from section 18–1–901(3)(r), C.R.S. 2014, the statutory section that generally defines terms used in the criminal code.[2] *Beck*, 187 P.3d at 1128–29. The division noted that the identity theft statute does not explicitly incorporate that definition and that section. *Id.* Instead, the division interpreted "thing

---

1. In *People v. Perez*, 2013 COA 65, —— P.3d —— (*cert. granted* Dec. 23, 2013), the defendant was charged with identity theft for using the social security number of another person to obtain employment. *Id.* at ¶ 2. However, the only issue in that case regarding identity theft was whether the defendant knew that the social security number he used belonged to an actual person. *Id.* at ¶ 15. *Perez* did not consider or discuss the meaning of the term "thing of value" in section 18–5–902(1)(a), C.R.S. 2014.

2. Section 18–1–901(3)(r), C.R.S. 2014, states that " '[t]hing of value' includes real property, tangible and intangible personal property, contract rights, choses in action, services, confidential information, medical records information, and any rights of use or enjoyment connected therewith."

of value" using the doctrine of *ejusdem generis*, which provides that a general term following a list applies only to things of the same general kind or class as those specifically mentioned. *Id.* at 1129. The division reasoned that the items listed in the statute "all have financial or economic value and can be lawfully obtained ... through the use of a financial device or personal or financial identifying information. None is a public right, duty, or entitlement that cannot be lawfully obtained in exchange for payment." *Id.* Thus, for purposes of identity theft, the division concluded that "thing of value" means something of pecuniary value. *Id.* It does not include "the nonpecuniary benefits of misleading and influencing the actions of a police officer, such as obtaining the use of another person's driving record." *Id.*

■ ¶ 15 Applying *Beck's* rationale here, we conclude that employment is a "thing of value" under the identity theft statute.[3] The primary purpose of obtaining employment is to receive the financial benefit of payment for labor performed. Thus, unlike access to another person's driving record, employment has pecuniary value in the form of salary or wages and other monetary benefits. Additionally, a job applicant demonstrates eligibility for employment by presenting personal identifying information, such as a name and social security number. Accordingly, in our view, employment has "financial or economic value and can be lawfully obtained ... through the use of a financial device or personal or financial identifying information." *Id.* We conclude, therefore, that a person who uses personal identifying information of another to obtain employment obtains a "thing of value" under section 18–5–902(1)(a).

¶ 16 Our conclusion is consistent with that of courts in other states that have interpreted comparable identity theft statutes. For example, in *State v. Ramirez*, 246 Wis.2d 802, 633 N.W.2d 656 (App.2001), the court affirmed the identity theft conviction a defendant who used another person's social security number to obtain a job. Wisconsin's

identity theft statute prohibited using the personal identifying information of another to obtain "credit, money, goods, services or anything else of value." *Id.* at 658 n. 3. The defendant argued that the only thing he obtained with the social security number was the opportunity to work, which has no intrinsic value. *Id.* at 659. The court disagreed, reasoning that "what Ramirez ultimately sought and obtained was the compensation and other economic benefits that flowed from the employment." *Id.* at 660. The court concluded that those benefits were "things of value" within the meaning of the identity theft statute. *Id.* Because the defendant obtained money in the form of wages as a result of his unauthorized use of another person's social security number, he committed identity theft under the Wisconsin statute. *Id.* at 662.

¶ 17 Similarly, in *People v. Montoya*, 373 Ill.App.3d 78, 311 Ill.Dec. 389, 868 N.E.2d 389 (2007), the court affirmed a defendant's conviction under Illinois' identity theft statute, which prohibited using another person's personal identifying information to "fraudulently obtain credit, money, goods, services, or other property." *Id.*, 311 Ill.Dec. 389, 868 N.E.2d at 392 (internal quotation marks omitted). Citing *Ramirez*, the court concluded that the defendant fraudulently obtained both money and services because "had defendant not used [the victim's] name and social security number to obtain a job, she would not have been entitled to receive the wages and insurance benefits that flowed directly from her employment." *Id.*, 311 Ill.Dec. 389, 868 N.E.2d at 394.

¶ 18 Finally, in *State v. Meza*, 38 Kan. App.2d 245, 165 P.3d 298 (2007), the court affirmed a defendant's conviction under Kansas' identity theft statute, which prohibited using another person's personal identifying information with "intent to defraud for economic benefit." *Id.* at 301. Relying on *Ramirez* and *Montoya*, the court concluded that using another person's name and social security number to obtain employment satisfied

---

**3.** The People contend that *Beck* was wrongly decided and that we should apply the broader statutory definition of "thing of value" from section 18–1–901(3)(r). We need not address this

contention, however, because we conclude that, even under the narrower interpretation set forth in *Beck*, employment is a "thing of value" for purposes of identity theft.

the requirements of the statute. *Id.* at 301–02.

¶ 19 We are persuaded by the reasoning in these cases and apply it here. Therefore, we conclude that employment is a "thing of value" under the identity theft statute.

■ ¶ 20 Given our interpretation of section 18–5–902(1)(a), we further conclude that the evidence was sufficient evidence to support Campos' conviction for identity theft. The prosecution presented ample evidence at trial to support a conclusion that Campos used S.A.'s personal identifying information to obtain employment at ABM. The prosecution introduced payroll records from ABM documenting wages paid to "S.A." Martinez, Campos' manager, testified that he personally handed Campos paychecks that were made out to "S.A." ABM's human resources coordinator testified about employee records that contained S.A.'s name and social security number, and those documents were admitted into evidence. On this record, a jury could reasonably conclude that Campos used S.A.'s personal identifying information to obtain gainful employment and, consequently, was guilty of identity theft.

¶ 21 Campos argues that, because she worked to earn her paychecks, she never received anything of pecuniary value to which she was not entitled. She maintains that a job per se has no pecuniary value, but merely provides an opportunity for the employee to earn money by performing labor. We reject these arguments for the same reasons stated in *Ramirez* and *Montoya.* Had Campos not used S.A.'s name and social security number to obtain a job at ABM, she would not have been in a position to receive the financial benefits that flowed from her employment. *See Montoya,* 311 Ill.Dec. 389, 868 N.E.2d at 394; *Ramirez,* 633 N.W.2d at 659–60. The record shows that she obtained work and received paychecks by misrepresenting herself as S.A. We conclude that these facts are sufficient to sustain her conviction for identity theft under section 18–5–902(1)(a).

■ ¶ 22 We also reject Campos' argument that she could not be convicted of identity theft because S.A. did not suffer a net economic loss. The plain language of section 18–5–902(1)(a) does not require that the person whose identity is stolen suffer financial harm. In any event, the record shows that S.A. was harmed by Campos' unauthorized use of her name and social security number. Campos' actions put S.A. at risk of additional tax liability, and her application for Medicaid benefits was initially denied. S.A. testified that she spent years trying to prove her Medicaid eligibility, and by the time her application was approved, she no longer needed it. Under these circumstances, we are not persuaded by Campos' contention that S.A. was not harmed.

¶ 23 For the reasons set forth above, we conclude that the evidence in this case was sufficient to sustain Campos' conviction for identity theft.

### III. Cross–Examination of Juan Martinez

¶ 24 Campos also contends that the trial court abused its discretion in restricting defense counsel's recross-examination of Juan Martinez on the subject of whether he had a valid social security number. She claims that this restriction also violated her constitutional rights under the Confrontation Clause. We disagree.

¶ 25 The trial court sustained relevancy objections to two questions that defense counsel asked Martinez on recross-examination: (1) whether he had a social security number and (2) whether he was required to give ABM a social security number when he went to work there. Defense counsel responded to the evidentiary objection, but did not raise the Confrontation Clause issue. Thus, the Confrontation Clause claim is raised for the first time in this appeal.

### A. Standards of Review

¶ 26 We review a trial court's evidentiary rulings for an abuse of discretion. *Davis v. People,* 2013 CO 57, ¶ 13, 310 P.3d 58. The trial court has discretion to determine the scope and limits of cross-examination and, absent an abuse of discretion, its ruling will not be disturbed on review. *People v. Ray,* 109 P.3d 996, 1001 (Colo. App. 2004). A trial court abuses its discretion if its decision is

manifestly unreasonable, arbitrary, or unfair. *Davis*, ¶ 13.

¶ 27 The Confrontation Clause of the United States Constitution guarantees the right of a criminal defendant to cross-examine prosecution witnesses. U.S. Const. amend. VI; *Vega v. People*, 893 P.2d 107, 118 (Colo. 1995). "[I]t is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or motive for testifying." *Merritt v. People*, 842 P.2d 162, 167 (Colo. 1992).

¶ 28 However, a trial court has "wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation which is repetitive or only marginally relevant." *Id.* at 166.

¶ 29 Because Campos did not preserve the Confrontation Clause argument at trial, we review this claim for plain error. *People v. Chavez*, 2012 COA 61, ¶¶ 29–30, 318 P.3d 22. Plain error is error that is obvious and seriously prejudicial, meaning that it " 'undermine[s] the fundamental fairness of the trial itself [so] as to cast serious doubt on the reliability of the conviction.' " *People v. Ujaama*, 2012 COA 36, ¶ 43, 302 P.3d 296 (quoting *People v. Taylor*, 159 P.3d 730, 738–39 (Colo. App. 2006)).

### B. Analysis

¶ 30 As noted, the trial court sustained the prosecutor's relevancy objections to defense counsel's questions on recross-examination about whether Martinez (1) had a social security number and (2) was required to give ABM a social security number when he went to work there. We perceive no error, evidentiary or constitutional.

¶ 31 Campos contends that the testimony defense counsel sought to elicit was admissible under CRE 608(b) to impeach Martinez's credibility.

¶ 32 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. A witness who takes the stand puts his or her credibility in issue, and the opposing party is entitled to impeach the witness' credibility. *People v. Segovia*, 196 P.3d 1126, 1130 (Colo. 2008). CRE 608(b) permits a trial court, in its discretion, to allow inquiry into specific instances of conduct on cross-examination if it is probative of truthfulness or untruthfulness. *People v. Caldwell*, 43 P.3d 663, 670 (Colo. App. 2001).

¶ 33 As an initial matter, we note that whether one has a social security number is not, by itself, probative of truthfulness or untruthfulness. Thus, the first question asked by defense counsel about whether Martinez had a social security number was not, on its own, relevant to his credibility. However, Campos claims that the excluded questions sought to explore whether Martinez was using a social security number belonging to someone else.

¶ 34 We agree with Campos that using a false social security number may be probative of one's character for truthfulness. *See United States v. Weekes*, 611 F.3d 68, 71 (1st Cir. 2010); *Andrade v. Walgreens–Optioncare, Inc.*, 784 F.Supp.2d 533, 535–36 (E.D.Pa.2011). Nevertheless, we conclude that the trial court did not abuse its discretion or violate Campos' confrontation rights by excluding this line of questioning during recross-examination.

¶ 35 The record shows that Campos' counsel had already extensively impeached Martinez's credibility during his initial cross-examination. Defense counsel questioned Martinez about a prior conviction for false reporting arising from a traffic stop in which Martinez lied to police about his identity and presented false identification documents. Martinez admitted to that conviction and the underlying facts. With respect to his employment at ABM, however, he stated, "I don't lie and I follow the rules of my job." Defense counsel continued to question him about dishonesty at work, asking him whether he worked under other names and whether he had recently resigned and been rehired. Martinez consistently denied any misconduct or dishonesty related to his employment at ABM.

¶ 36 Thus, defense counsel was given ample opportunity to impeach Martinez's credibility on cross-examination, and he did so extensively with respect to the false reporting conviction. Defense counsel had already questioned Martinez at length about misconduct and dishonesty at work before he asked about Martinez's social security number. Accordingly, the record shows that the trial court was well within its discretion to conclude that the two questions at issue here were repetitive of the areas already covered and were only marginally relevant. *See Merritt*, 842 P.2d at 166.

¶ 37 Additionally, we note that, after sustaining the prosecutor's objections to the two questions at issue here, the trial court allowed defense counsel to ask, "Would the information that you submitted on your paperwork when you started working there, would that all be accurate and true?" Martinez answered in the affirmative.

¶ 38 Under these circumstances, precluding responses to the two questions about Martinez's social security number did not "excessively" limit the defense's ability to cross-examine Martinez regarding his credibility. *Id.* at 167. Moreover, the excluded line of questioning did not, in our view, relate to Martinez's bias, prejudice, or motive for testifying—the areas that the supreme court has identified as particularly important to a defendant's confrontation rights. *See id.*

¶ 39 For these reasons, we conclude that the trial court's minor limitation on the cross-examination of Martinez was not an abuse of discretion and did not violate Campos' rights under the Confrontation Clause. We thus perceive no error in the trial court's decision to preclude the challenged line of questioning.

### IV. Conclusion

¶ 40 The judgment is affirmed.

Sternberg * and Roy*, JJ., concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and