Opinion by JUDGE HARRIS
¶ 1 Leon R. Ewing was convicted of two counts of sexual assault on a child by one in a position of trust. The jury did not make a specific finding that the victims were younger than fifteen at the time of the offense, but the court nonetheless applied the sentencing enhancement for age of the victim.
¶ 2 On appeal, Ewing contends that his sentence amounts to structural error and that he must be resentenced without the enhancement. We disagree. While the court failed to submit the sentence enhancer to the jury, we conclude that the error does not require reversal. We also reject Ewing's contention that the court violated his rights under the Confrontation Clause by limiting the scope of his recross-examination.
*190 ¶ 3 For these reasons, we affirm the convictions and sentence.
I. Background
¶ 4 In March 2013, Ewing was charged with sexually assaulting two brothers, J.B. and M.B. The brothers alleged that the sexual assaults occurred during the summer of 2008, when J.B. was around eleven years old and M.B. was around thirteen years old. At that time, Ewing was living in the basement of the boys' family home. Ewing moved out of the home in 2008 or 2009, and he had not been in contact with the family since then.
¶ 5 The allegations arose in May 2011, after an apparent suicide attempt by J.B. While in the hospital, J.B. stated that he had tried to kill himself because he had been sexually abused by Ewing. M.B. then alleged that Ewing had also sexually abused him.
¶ 6 Detective Nicholas Kundert opened an investigation when the allegations were first made, but he could not locate Ewing until December 2012. After Ewing was located, he was charged with nine class 3 felony counts of sexual assault on a child by one in a position of trust.[1] Eight of the counts were for crimes committed against J.B. The eight counts related to four separate incidents of sexual assault. For each incident, the prosecution charged Ewing with one count of sexual assault on a child by one in a position of trust (pattern of abuse), and one count of sexual assault on a child by one in a position of trust (victim under fifteen years old). The last count related to an incident with M.B. for which the prosecution charged Ewing with sexual assault on a child by one in a position of trust (victim under fifteen years old).
¶ 7 The jury convicted Ewing of two counts of sexual assault on a child by one in a position of trust-one against J.B. and one against M.B. It specifically found that the assault against J.B. was not committed as part of a pattern of abuse. The jury made no findings regarding J.B.'s and M.B.'s ages at the time of the assaults.
¶ 8 At sentencing, the court entered convictions and sentences for two counts of class 3 felony sexual assault on a child by one in a position of trust (victim under fifteen years old). Neither party objected to the class 3 felony designation.
II. Challenge to the Sentence
¶ 9 Sexual assault on a child by one in a position of trust is typically a class 4 felony. § 18-3-405.3(3), C.R.S. 2016. However, the offense is elevated to a class 3 felony if (1) the victim is less than fifteen years of age or (2) the offense is committed as part of a pattern of abuse. § 18-3-405.3(2)(a).
¶ 10 Ewing contends that the district court erred in entering judgments of conviction and sentences for sexual assault on a child by one in a position of trust as a class 3 felony because the jury did not find, nor was it asked to find, that J.B. and M.B. were younger than fifteen years old at the time of the assaults. Although we conclude that the court erred in failing to submit the sentence enhancer to the jury, under the plain error standard of reversal, we affirm Ewing's convictions and sentence.
A. The Failure to Submit the Sentence Enhancer to the Jury Constitutes a Blakely Error
¶ 11 Subject to certain exceptions not relevant here, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Apprendi v. New Jersey , 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ; Lopez v. People , 113 P.3d 713, 723 (Colo. 2005). The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely v. Washington , 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ; see also Medina v. People , 163 P.3d 1136, 1140 (Colo. 2007) (The Fifth and Sixth Amendments "require a jury verdict finding a defendant guilty of every element [of the offense] beyond a reasonable doubt.").
*191 ¶ 12 Here, the jury expressly found that the sexual assaults were not committed as part of a pattern of abuse and made no finding with respect to the age of the victims. Nonetheless, the court enhanced Ewing's sentence based on the age of the victims. We conclude that a Blakely error occurred when the court failed to submit the sentence enhancer to the jury.
B. The Blakely Error Does Not Constitute Structural Error
¶ 13 Ewing acknowledges that he was charged with a class 3 felony, sexual assault on a child by one in a position of trust, in violation of section 18-3-405.3(2)(a), and that the charging document alleged that he had committed sexual assault against victims who were less than fifteen years of age.[2] But, relying on Medina , he insists that, without a specific finding by the jury that his victims were younger than fifteen, the jury convicted him of a class 4 felony, and thus the court's sentence on a class 3 felony constituted structural error. 163 P.3d at 1141-42. We are not persuaded.
¶ 14 In Medina , the defendant was convicted of accessory to a crime under jury instructions that described the crime of felony accessory based on assisting a person who is suspected of having committed a crime, a class 5 felony. Id. at 1139 ; see also § 18-8-105(4), C.R.S. 2016 (It is a class 5 felony to render assistance to a person who is "suspected of or wanted for a crime."). However, the court entered a conviction and sentence for a different crime: felony accessory based on assisting a person who has committed a crime, a class 4 felony. § 18-8-105(3) (It is a class 4 felony to render assistance to a person who "has committed, or has been convicted of, or is charged by pending information, indictment, or complaint with a crime.").
¶ 15 The supreme court acknowledged that if the error amounted to a misdescription of an element of the class 4 felony offense, a harmless error standard of review applied under Neder v. United States , 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and Griego v. People , 19 P.3d 1 (Colo. 2001). But it concluded that the jury instructions describing the class 5 felony did not simply misdescribe an element of the class 4 offense, as the court of appeals had held. Rather, Medina, having been found guilty of one offense by the jury, was then effectively adjudged "guilty of a new and different crime" by the court. Medina , 163 P.3d at 1140-41.
¶ 16 In reaching this conclusion, the court noted that Medina's complaint was ambiguous as to which crime had been charged; although it specified that the charged crime was a class 4 felony, it "failed to include the necessary element that Medina knew that [the person she assisted] had committed the crime." Id. at 1140. By tendering jury instructions on the first day of trial that tracked the elements of the class 5 offense, the prosecution clarified that it was charging the offense of assisting a person suspected of committing a crime. Id. And at trial, the prosecution referred to the class 5 offense, arguing that Medina knew the person she assisted "was suspected of and wanted for a crime." Id. (emphasis omitted). Thus, there was no "misdescription" of an element-the jury was properly instructed on the elements of the crime that the prosecution had charged and litigated at trial. When the court imposed a sentence on the class 4 offense, it effectively sentenced Medina for "an entirely different crime" than the offense of conviction, *192 resulting in structural error. Id . at 1141 n.6.
¶ 17 This case is not analogous to Medina . The offense for which the defendant was sentenced in Medina -class 4 felony accessory-has different elements and requires proof of a different mens rea than the charged offense-class 5 felony accessory. People v. Hopkins , 2013 COA 74, ¶ 16, 328 P.3d 253. Although both offenses are described within section 18-8-105, that section, "create[s] four separate offenses of accessory to crime." People in Interest of H.W. , 226 P.3d 1134, 1140 (Colo. App. 2009). In contrast, the offenses at issue in this case-class 3 and class 4 felony sexual assault on a child by one in a position of trust-are not different crimes. Whether the offense is committed as a class 3 or class 4 felony, "the substantive crime of which the defendant stands convicted [ ] remains the act statutorily designated as ... '[s]exual assault on a child by one in a position of trust.' " People v. Simon , 266 P.3d 1099, 1108 (Colo. 2011). The "under fifteen" condition, which elevates the crime from a class 4 felony to a class 3 felony, is a sentence enhancer, not an element of a separate offense. See People v. Leske , 957 P.2d 1030, 1039 (Colo. 1998) ("Proof that the victim was under fifteen years of age at the time of the offense thus merely serves to enhance the sentence of the position of trust offense; it is not necessary to establish an element of that offense.").
¶ 18 As a consequence, the court's error in this case is indistinguishable from the error analyzed in Washington v. Recuenco , 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). In Recuenco , the information charged defendant with assault in the second degree by use of a deadly weapon: "to wit: a handgun." Id. at 215, 126 S.Ct. 2546. The jury found him guilty of assault and of using a deadly weapon during the commission of the offense. Id. But the jury did not determine whether the deadly weapon the defendant had used was a firearm. Nonetheless, at sentencing the court found that the defendant had been armed with a handgun and added an additional three years to his sentence.
¶ 19 On appeal, the defendant argued-as Ewing argues here-that the trial court essentially directed a verdict against him on an offense more serious than the one for which the jury convicted him. Id. at 220-21, 126 S.Ct. 2546. The United States Supreme Court rejected that argument, concluding that the failure to submit the sentence enhancer to the jury was the equivalent of the court's omission of an element of the offense from the jury instructions-an error the court in Neder had determined was subject to harmless error review. Id. at 220, 126 S.Ct. 2546.[3]
¶ 20 Additionally, a division of this court recently applied constitutional harmless error review to a similar error. In People v. Mountjoy , 2016 COA 86, --- P.3d ----, the district court aggravated the defendant's sentence based on facts not found by the jury. Id. at ¶ 19 (assuming court committed Blakely error in aggravating defendant's sentence). Relying on Recuenco , as well as cases in other jurisdictions decided both before and after Recuenco , the division determined that the error was harmless beyond a reasonable *193 doubt because the evidence was overwhelming on the three primary facts the trial court used to aggravate the defendant's sentence. Id. at ¶ 23 ; see also People v. Garcia , 2017 COA 1, ¶¶ 16-17, ---P.3d ---- (distinguishing Medina and relying on Recuenco to conclude that "an unobjected-to error in the form of a misdescription or omission of an element of an offense must be reviewed for plain error").
C. The Blakely Error Does Not Constitute Plain Error
¶ 21 Like the errors in Recuenco and Mountjoy , the error here was the trial court's failure to submit a sentence enhancer or aggravator to the jury. This trial error would ordinarily be subject to constitutional harmless error review, but because Ewing failed to object in the district court, we review for plain error. Tumentsereg v. People , 247 P.3d 1015, 1019 (Colo. 2011). Plain error review addresses error that is both obvious and substantial. People v. Miller , 113 P.3d 743, 750 (Colo. 2005). Trial error can rise to the level of plain error only if the error "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." Id. (quoting People v. Sepulveda , 65 P.3d 1002, 1006 (Colo. 2003) ).
¶ 22 Even if we assume the error was obvious in light of Blakely and Lopez , there is no reasonable possibility that the jury could have concluded that the victims were fifteen or older at the time of the offenses. The jury was instructed that one of the elements of the crime of sexual assault on a child by one in a position of trust is that the defendant committed the act "at or about the date and place charged." The information alleged that all of the assaults occurred between May 1, 2008, and August 31, 2008. At trial, M.B. testified that he was born in June 1994, and J.B. testified that he was born in July 1997. The jury therefore was presented with undisputed evidence that M.B. was either thirteen or fourteen years old at the time of the assaults, and J.B. was either ten or eleven years old.
¶ 23 Ewing contends that based on the witnesses' inability to precisely recall when Ewing was living with the victims' family, the jury could have concluded that M.B. was assaulted after June 2009, when he was fifteen years old. But this argument ignores the fact that the jury was instructed that it could find Ewing guilty only if it determined that the assaults occurred at or about the date charged, in 2008. We assume the jury followed this instruction. Copeland v. People , 2 P.3d 1283, 1288 (Colo. 2000).
¶ 24 In sum, we conclude that the court's error does not cast serious doubt on the reliability of the sentence. See People v. Banark , 155 P.3d 609, 611 (Colo. App. 2007) ( Blakely error did not amount to plain error because it did not so undermine the fundamental fairness of the sentencing proceeding as to cast doubt on the reliability of the sentence).
III. Challenge to Limit on Recross-Examination
¶ 25 Ewing further contends that the court impermissibly limited the scope of his recross-examination of Detective Kundert in violation of his rights under the Sixth Amendment's Confrontation Clause.
¶ 26 Detective Kundert was the lead detective responsible for the investigation. On cross-examination, defense counsel attacked the reliability of the investigation, questioning why the detective never interviewed J.B. and why his only interview with M.B. occurred eighteen months after the initial allegations. In response, Detective Kundert testified that, once a victim has alleged abuse, he will not conduct a further interview so as to avoid "step [ping] on their original statements and skew[ing] those statements."
¶ 27 On redirect, the detective further explained that if the victim's stories are not consistent in a subsequent interview, it would "taint their original statements." The prosecution also asked: "If you reinterview a child who has already made a disclosure, might that interject your personal biases into that interview?" Detective Kundert responded that "especially if I, as the detective, have you know, more knowledge about what other people have said or didn't say or things like *194 that. It's actually more prudent to not have that contact with a younger victim like that."
¶ 28 Defense counsel asked to recross the detective "on biases," arguing that the prosecution brought up "witness bias and/or interviewer/interrogative bias," which had not been previously raised on direct or cross-examination. Defense counsel did not, however, raise the Confrontation Clause issue. The court denied the request, stating that the issue was extrinsic and had already been addressed.
¶ 29 A defendant has a constitutional right to confront and cross-examine witnesses, Krutsinger v. People , 219 P.3d 1054, 1061 (Colo. 2009), but the right is not absolute or unlimited. People v. Larsen , 2015 COA 157, ¶ 30, --- P.3d ----. The scope and limits of cross-examination are matters within the sound discretion of the trial court, and absent an abuse of that discretion, we will not disturb the court's rulings on appeal. People v. Conyac , 2014 COA 8M, ¶ 91, 361 P.3d 1005.
¶ 30 Ewing does not contend that the trial court abused its discretion in limiting recross-examination; rather, he raises a Confrontation Clause claim. Because Ewing did not preserve this argument at trial, we review for plain error. People v. Campos , 2015 COA 47, ¶ 29, 351 P.3d 553. Plain error is error that is obvious and seriously prejudicial, meaning that it undermines the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the conviction. Id.
¶ 31 "When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters." People v. Baker , 178 P.3d 1225, 1232 (Colo. App. 2007) (quoting United States v. Riggi , 951 F.2d 1368, 1375 (3d Cir. 1991) ). However, once a party has had an opportunity to substantially exercise the right of cross-examination, courts have discretion to limit recross-examination when no new matters have been raised on redirect or additional testimony would be only marginally relevant. Id. ; see also Merritt v. People , 842 P.2d 162, 166 (Colo. 1992) ("[A] trial court has wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation which is repetitive or only marginally relevant.").
¶ 32 Ewing argues first that, on redirect, "Detective Kundert admitted that he had a bias against ... Ewing," and thus he should have been allowed to question the detective regarding this bias and how it might have prejudiced the investigation. But this argument takes the colloquy out of context-neither the prosecutor nor the detective referenced personal bias against Ewing; they were discussing the informational bias that an interviewer might have after conducting an outside investigation. Defense counsel recognized as much at trial when he stated that the prosecution raised "interviewer/interrogative bias" for the first time during redirect. Thus, while we agree that excessive limitation on a defendant's ability to cross-examine a witness regarding bias or prejudice could amount to a Confrontation Clause violation, see Merritt , 842 P.2d at 166-67, we disagree, as a factual matter, that this door was opened on redirect.
¶ 33 Second, Ewing argues that the detective's testimony misleadingly implied that he was the only person who could interview the victims. And according to the detective's testimony, because he had an informational bias, which might inadvertently influence the victim's statements, it was "actually more prudent" not to interview the victims at all. In light of this testimony, Ewing says, he should have been permitted to counter the detective's testimony by asking him about the availability of a "blind" interview, in which a person with no information about the case conducts the interview. This topic, however, was largely covered during cross-examination.
¶ 34 During his initial questioning of the detective, defense counsel elicited information about Safe Passages, a child advocacy center that conducts forensic interviews with children. Detective Kundert testified that Safe Passages interviewers are trained to *195 obtain accurate information while not retraumatizing the child. He acknowledged that staff at Safe Passages was not asked to conduct any interviews in this case. Thus, defense counsel had already elicited the fact that, even if the detective had properly avoided interviewing the children because of possible bias, an unbiased interview could have been conducted by an outside organization, such as Safe Passages, but was not. Any additional information on this topic would have been only marginally relevant. Accordingly, the trial court did not err in refusing to permit recross-examination on this subject. See Campos , ¶ 36 (no error for court to limit cross-examination where proposed questions concerned areas already covered).
¶ 35 In any event, even if we assume error, and even if we further assume that the error was obvious (a dubious proposition in this case), the error was not so prejudicial as to cast doubt upon the reliability of the conviction. During cross-examination, defense counsel established that, during the eighteen months following the children's allegations, the detective conducted no investigation beyond his attempt to locate Ewing. And defense counsel repeatedly cross-examined the detective on why he did not attempt to interview the victims during this time.
¶ 36 In fact, despite his concerns that his knowledge about the case might taint the reliability of M.B.'s statements, the detective eventually interviewed M.B. after questioning Ewing. Accordingly, any prejudice stemming from the court's limitation on recross-examination was slight, and it did not cast doubt upon the reliability of Ewing's convictions.
IV. Conclusion
¶ 37 The convictions and sentence are affirmed.
JUDGE DAILEY and JUDGE FURMAN concur.

The complaint also charged three crime of violence counts.

With respect to the two sexual assault counts on which Ewing was found guilty, the complaint charged:
Count 10-Sexual Assault on a Child by One in a Position of Trust (F3)
Between and including May 1, 2011 and August 31, 2011, Leon Roy Ewing unlawfully, feloniously, and knowingly subjected [J.B.], not his spouse, to sexual contact and the victim was less than fifteen years of age, and the defendant was in a position of trust with respect to the victim; in violation of section 18-3-405.3(1), (2)(a), C.R.S.
Count 11-Sexual Assault on a Child by One in a Position of Trust (F3)
Between and including May 1, 2011 and August 31, 2011, Leon Roy Ewing unlawfully, feloniously, and knowingly subjected [M.B.], not his spouse, to sexual contact and the victim was less than fifteen years of age, and the defendant was in a position of trust with respect to the victim; in violation of section 18-3-405.3(1), (2)(a), C.R.S.

Thus, even if we characterized the "under fifteen" condition as an element of the class 3 felony offense of sexual assault on a child by one in a position of trust, the characterization would nevertheless be without significance for purposes of classifying its omission from the jury instructions as trial, rather than structural, error. See Neder v. United States , 527 U.S. 1, 10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (omission of an element of the offense from jury instructions is trial error subject to harmless error review); see also Tumentsereg v. People , 247 P.3d 1015, 1018-19 (Colo. 2011) (whether "physically aided or abetted" condition of section 18-3-402(5)(a)(I), C.R.S. 2016, constituted a sentence enhancer or an element was irrelevant for purposes of determining the remedy). The error in Medina was structural not because the jury instruction omitted an element of the class 4 felony accessory offense, but because the defendant was effectively charged with a class 5 felony, defended against the class 5 felony charge, and was convicted by a jury properly instructed on the class 5 felony offense of accessory. Tumentsereg , 247 P.3d at 1019 ; see also Lehnert v. People , 244 P.3d 1180, 1186 n.7 (Colo. 2010) (distinguishing Medina on these grounds). But here, Ewing was charged with a class 3 felony (a violation of section 18-3-405.3(2)(a), C.R.S. 2016 ) based on the age of the victims, and the charging document specifically alleged that J.B. and M.B. were under the age of fifteen at the time of the offenses. And throughout the trial, the victims' ages were purposefully presented to the jury.