Darkhanbayar TUMENTSEREG,
Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 08SC667.

Supreme Court of Colorado,
En Banc.

Feb. 14, 2011.

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy Public Defender Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

Tumentsereg petitioned for review of the court of appeals judgment affirming his conviction of class-two-felony sexual assault, among others, and his indeterminate sentence of sixteen years to life. Although the court of appeals found that the trial court erred in omitting the word "physically" from the statutory formula, "physically aided or abetted," in its interrogatory distinguishing class-two-felony sexual assault from class-four-felony sexual assault, the appellate court nevertheless held the error to be unobjected-to trial error not rising to the level of plain error. The court of appeals also rejected the defendant's assertion that the trial court abused its discretion in failing to consider a sentence of less than sixteen years, under the erroneous belief that it was statutorily obliged to impose a sentence to at least the mid-point of the presumptive range for a class two felony.

In the absence of any evidence from which the jury could have found that the actor was "aided or abetted" in any manner other than "physically," there was no reasonable possibility that this omission could have contributed to the defendant's conviction of class-two-, as distinguished from class-four-, felony sexual assault, and therefore the omission did not amount to plain error. Because the trial court, in addition, supported its sixteen-year sentence with appropriate considerations concerning the nature of the offense, the character of the offender, and the public interest, without suggesting any belief that a less onerous sentence would be appropriate in this case or that it would have been statutorily barred from imposing a lesser sentence if it were so inclined, the judgment of the court of appeals is therefore affirmed.

**I.**

Darkhanbayar Tumentsereg was charged with kidnapping, several counts of sexual assault and conspiring to commit sexual assault, second degree assault, two counts of menacing, and several counts of committing crimes of violence. All of the charges arose from a single incident in January 2001 in which the defendant and three other men gathered at the apartment of one of them, after which one of the men reported to the police that he had been beaten and anally raped. Tumentsereg was ultimately convicted of class-two-felony sexual assault, conspiracy to commit sexual assault, felony menacing, and third degree assault. He was sentenced to an indeterminate sentence of sixteen years to life on the sexual assault count and one year each for the remaining

convictions, with all of the sentences ordered to run concurrently.

At trial, the only witnesses asserting first-hand knowledge of the relevant events were the victim and the man in whose apartment the assault occurred. The sum total of their testimony described an afternoon of drinking, after which the fourth man, making clear his feeling that the victim was homosexual, forced him into the bedroom, partially immobilized him by pulling his shirt over his head, and anally assaulted him. Medical examination shortly thereafter confirmed that the victim had suffered facial and anal trauma. Both witnesses also testified that the man in whose apartment the events occurred tried to come to the victim's assistance but was physically prevented from doing so by the defendant.

Both witnesses testified that the primary assailant called out for the defendant to prevent the would-be rescuer from interfering. The victim further testified that in addition to interfering with the rescue attempt, the defendant at some point also physically restrained him from resisting the sexual attack. Although the would-be rescuer contradicted the victim on that point, he testified that the defendant not only fought with him to prevent him from entering the bedroom but also threatened him with a knife.

Neither the principal assailant nor the defendant testified at the trial. The defendant's theory-of-the-case instruction asserted merely that he neither sexually assaulted nor menaced the victim and that the principal assailant acted alone throughout. Out-of-court statements by the defendant that were introduced at trial conceded a physical altercation with the would-be rescuer but asserted that the defendant was asleep during, and was therefore unaware of, any sexual assault. The defendant later left the apartment and was arrested the next day, when he came to the police station.

In part because the victim initially reported that he had been anally penetrated by both men, the defendant was charged with the same offenses as the principal assailant. Although he continued to assert that the defendant threatened and physically restrained him during the attack, the victim conceded in later interviews that he had been anally penetrated only by the other attacker. A number of the charges against the defendant were thereafter dismissed, but the charges of sexual assault, including class-two-felony sexual assault, were retained on the theory that the defendant was accountable as a principal for the behavior of the principal assailant and that the principal assailant was guilty of a class-two-felony under a statutory provision elevating the seriousness of a sexual assault if the assailant is physically aided or abetted by another.

The jury returned guilty verdicts for, among other things, sexual assault, along with a finding that the defendant was aided or abetted by another in the commission of the sexual assault.

## II.

In conjunction with the July 2000 repeal of sections 18–3–402, C.R.S. (1999) ("Sexual assault in the first degree") and 403 ("Sexual assault in the second degree"), the elements of both offenses were substantially reenacted as section 402, under the heading simply of "Sexual assault," without any further reference to degree of offense. *See* ch. 171, sec 18–19, § 18–3–402 to –403, 2000 Colo. Sess. Laws 692, 698–700. Depending upon the existence of various circumstances concerning the act, the actor, or the victim, which are enumerated within the body of the statute itself, the offense of sexual assault is now proscribed as either a class two, three, or four felony, or a class one misdemeanor. In addition, this same statutory section limits the sentencing ranges available for conviction of class-one-misdemeanor and class-two-felony sexual assault, and expressly mandates that any person convicted of felony sexual assault committed on or after November 1, 1998 be sentenced in accordance with the Colorado Sex Offender Lifetime Supervision Act of 1998, currently found at sections 18–1.3–1000 through 1012, of the revised statutes. *See* § 18–3–402(3), (5), (6), C.R.S. (2010).

As relevant here, the statute proscribes, as a class four felony, knowingly inflicting sexual penetration on someone else whenever the

actor causes submission by means of sufficient consequence reasonably calculated to cause submission against that person's will. § 402(1)(a), (2). If, in addition, the actor causes submission through the actual application of physical force or physical violence, the sexual assault is instead classified as a class three felony. § 18–3–402(4)(a). If the actor is "physically aided or abetted" in the commission of a sexual assault by one or more others, the sexual assault is classified as a class two felony. § 18–3–402(5)(a)(I).

The jury in this case was instructed on the definition of complicity and, further, that the defendant would be guilty of an offense committed by another person if the defendant were found to be a complicitor in the commission of that offense. *See* § 18–1–603, C.R.S. (2010). The jury was instructed as to the elements of the charged offenses of class-three- and class-four-felony sexual assault, which were presented to it as greater and lesser offenses, and it was asked in a single verdict form to determine whether the defendant was guilty of either offense. Rather than by separate elemental instruction, the jury was presented with the option to find circumstances elevating the offense of sexual assault to the level of a class two felony by interrogatory in the same verdict form. In the single verdict form presented for sexual assault, the jury was instructed, more particularly, that if it were to find the defendant guilty of either class-three- or class-four-felony sexual assault, it was to further determine whether he was aided or abetted in the commission of that offense by some other person and, separately, whether he committed that offense in a manner rendering it a crime of violence.[1] Neither this method of determining the felony classification of any sexual assault found to have been committed by the defendant nor any elemental instruction on sexual assault itself was challenged on appeal.

The jury returned a verdict of guilt on the lesser rather than the greater of the two sexual assault offenses and found that this sexual assault was not proven beyond a reasonable doubt to have been committed as a crime of violence. The jury answered affirmatively, however, the interrogatory concerning aiding or abetting by another. Although not objected to, and apparently not noticed by anyone at trial, this interrogatory omitted the word "physically" from the statutory formula "physically aided or abetted," the condition elevating sexual assault from a class four to a class two felony in section 18–3–402(5)(a)(I). As he did in the court of appeals, the defendant contends that this omission requires reversal of the judgment of conviction against him for class-two-felony sexual assault and requires instead that judgment enter, and that he be resentenced within the penalty range, for a class-four-felony sexual assault.

Unless error is structural in nature, affecting the very framework in which the trial proceeds and rendering the trial fundamentally unfair, its occurrence does not necessarily require reversal of a criminal conviction or sentence. *Neder v. United States,* 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Krutsinger v. People,* 219 P.3d 1054, 1058 (Colo.2009).[2] It is now well-settled that error in the form of a misdescription or omission of an element of an offense does not, for that reason alone, constitute structural error. *Neder,* 527 U.S. at 15, 119 S.Ct. 1827; *Griego v. People,* 19 P.3d 1, 8 (Colo. 2001). Whether or not the "physically aided or abetted" condition of section 18–3–402(5)(a)(I) could for some purposes be meaningfully characterized as a sentence-enhancing factor, as distinguished from an element of a greater sexual assault offense, such characterization would nevertheless be without significance for purposes of classifying its

---

1. Prior to the repeal and reenactment of section 18–3–402 in 2000, the "physically aided or abetted by one or more other persons" condition served to elevate only sexual assault in the first degree to the level of a class two felony.

2. Although we have in the past understood structural error to require automatic reversal, the United States Supreme Court has recently noted that it has several times declined to resolve the question whether structural error automatically satisfies the third prong of the plain-error test delineated in *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *See Puckett v. United States,* —— U.S. ——, 129 S.Ct. 1423, 1432, 173 L.Ed.2d 266 (2009).

misdescription as trial, rather than structural, error. *See Washington v. Recuenco*, 548 U.S. 212, 220, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (extending *Neder*'s treatment of omitted elements in jury instructions to omitted sentencing factors on the grounds that *Apprendi v. New Jersey*, 530 U.S. 466, 478, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), made clear the two are constitutionally indistinct from one another); *Lehnert v. People*, 244 P.3d 1180, 1182 (Colo.2010) (characterizing unobjected-to error on verdict form as trial error and conducting plain-error analysis on that basis).

As we explained in *Lehnert*, we treated the error in *Medina v. People*, 163 P.3d 1136 (Colo.2007), as structural not simply because the jury was mis-instructed concerning the definition of class-four-felony accessory, but rather because it was actually instructed on the definition of, and both parties operated at trial under the assumption that the defendant had been charged with, class-five-felony accessory. *Lehnert*, 244 P.3d at 1186 n. 7. Although the information in this case, like the interrogatory, omitted the word "physically," it clearly charged the defendant with the class-two-felony version of sexual assault committed when the actor is aided or abetted by one or more others. Unlike *Medina*, the parties in this case operated throughout with the understanding that the interrogatory in question was intended to distinguish class-two-from both class-three and class-four-felony sexual assault, and defense counsel expressly proceeded at sentencing on the basis of a conviction for class-two-felony sexual assault.

▪ As unobjected-to trial error rather than structural error, the trial court's omission could justify reversal as the appropriate remedy only if it rose to the level of plain error. Trial error can rise to the level of plain error only if, among other things, there is a reasonable possibility that it contributed to the defendant's conviction or sentence. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (citing *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001)). Because the evidence presented to the jury failed to provide any basis for finding that the defendant aided or abetted another person to commit sexual assault

other than by doing so physically, there was no reasonable possibility in this case that the trial court's omission contributed to the defendant's conviction and sentence for class-two-, as distinguished from class-four-, felony sexual assault.

▪ The word "physically" as used in section 18–3–402(5)(a)(I) is not defined as a statutory term of art. Although we have had little occasion to distinguish "physically" aiding or abetting from aiding or abetting in some other way, in common parlance the term clearly distinguishes providing physical assistance in the commission of a crime from counseling, encouraging, or inciting another to commit it, *see, e.g., People v. Higa*, 735 P.2d 203, 206 (Colo.App.1987) (finding hand clapping and vocal encouragement sufficient to support a complicity conviction but nonetheless insufficient to satisfy the physically-aiding-or-abetting standard in section 18–3–402), or even from the use of deception to shield its commission from interference. Physically aiding or abetting therefore necessarily implies physical action in assisting with the commission of the sexual assault, but nothing in the statutory language limits that physical aiding or abetting to physical action directed against the victim, as distinguished from physical action directed against a rescue attempt.

The only evidence at trial of the defendant's participation came from the victim and his self-described rescuer. Both testified to the principal assailant's call for the defendant to assist in thwarting the rescue attempt and to the ensuing physical struggle between the defendant and the rescuer. Although the would-be rescuer contradicted the victim's claim that the defendant also immobilized the victim's hands, the rescuer testified that in addition to physically preventing him from entering the bedroom, the defendant actually warded him off by threatening him with a knife. Neither the principal assailant nor the defendant testified, and the defendant's theory-of-the-case instruction asserted merely that he did not sexually assault or menace the victim and that the principal assailant acted alone. Similarly, the defendant's out-of-court statements to the police introduced at trial admitted a physical altercation with

the self-described rescuer and asserted merely that the defendant was asleep by the time of, and was therefore unaware of, any sexual assault on the victim. There was also no evidence whatsoever that the attack was pre-planned or that the defendant offered verbal encouragement, either before or during the assault.

Because the only evidence that the defendant aided or abetted the principal assailant in committing sexual assault was evidence to the effect that he did so either by threatening or physically interfering with the rescue attempt or by physically restraining the victim, there was therefore no reasonable possibility, whatever the jury may or may not have believed, that its failure to expressly distinguish physical from non-physical aiding or abetting could have contributed to the defendant's conviction of class-two-, rather than class-four-, felony sexual assault.

### III.

██ As he did in the court of appeals, the defendant also contends that he is nevertheless entitled to resentencing because the trial court imposed his indeterminate sentence under the misapprehension that it was statutorily prohibited from considering, for its lower component, any period of years below the mid-point of the presumptive range for a class two felony. More particularly, the defendant asserts that the trial court believed his sentence to be governed by section 18–1.3–401(8)(e.5), but that section 18–1.3–1004(1) of the Lifetime Supervision of Sex Offenders Act actually permitted an indeterminate sentence with a lower component as low as the *minimum* of the presumptive range—merely eight years—and that, as the more specific of the two statutes, the Lifetime Supervision Act should have controlled. Defense counsel expressly argued at sentencing against application of the Lifetime Supervision Act and, apparently because he considered it more advantageous by permitting a probationary sentence, he actually argued in favor of sentencing pursuant to the forerunner of section 18–1.3–401(8)(e.5). The defendant's current argument was therefore never raised to or addressed by the sentencing court.

Apart from the interplay between sections 18–1.3 401(8)(e.5) and 1004(1), now raised on appeal, a number of other factors complicated the question whether the lower component of the defendant's indeterminate sentence could fall below the mid-point of the presumptive range for a class two felony. Although the indeterminate sentencing scheme of the 1998 Lifetime Supervision of Sex Offenders Act had already required the addition of a new subsection to the mandatory sentencing provision for sexual assaults physically aided or abetted by another, *see* § 18–1–105(9)(e.5), and the repeal of section 18–3–403 and reorganization of section 402 in 2000 had already resulted in the elimination of different degrees in the classification of sexual assault, the sexual assault provision under which the defendant was convicted continued to mandate sentencing under section 18–1–105(9)(e), applicable by its own terms only for pre–1998 offenses, which (along with the new subsection (9)(e.5) for post–1998 offenses) continued to refer to conviction for *first degree* sexual assault, in express reference to subsections of the statute that had since been repealed. Rather than attempt to unravel the confusion caused by the legislature's failure to precisely coordinate the adoption of the Lifetime Supervision of Sex Offenders Act, the reorganization of the sexual assault statute, and the mandatory sentencing provisions of 18–1–105(9) for specific kinds of sexual assault, the sentencing court simply acknowledged the difficulty and exercised its discretion to both deny probation as inappropriate under the circumstances of this case and sentence the defendant to an indeterminate term of incarceration of sixteen years to life.

The sentencing court's choice of sixteen years for the lower component of its indeterminate sentence was well within the permissible range, according to any of the arguably applicable statutes, and the sentencing court supported its exercise of discretion with reference to the nature of the particular offense, the character of the offender, and the public interest. In the absence of any suggestion by the sentencing court that it considered itself statutorily bound to impose a sentence to at least the mid-point of the presumptive

range and therefore failed to exercise discretion with regard to any lesser sentence, the record does not reflect an abuse of its discretion. *See Adair v. People,* 651 P.2d 389, 392 (Colo.1982). Under these circumstances, the defendant would not be entitled to resentencing, even if the full penalty range for a class two felony were available at the time of his particular offense, as he contends. It is therefore unnecessary to address his argument concerning conflicting sentencing statutes.

## IV.

Because the trial court's omission of the word "physically" from its interrogatory distinguishing class-two-from class-four-felony sexual assault did not amount to plain error under the circumstances of this case, and because there is no indication that the trial court failed to exercise its discretion with regard to the full range of penalties available for class two felonies, the judgment of the court of appeals is affirmed.

Chief Justice BENDER dissents, and Justice MARTINEZ joins in the dissent.

Chief Justice BENDER, dissenting.

The defendant was sentenced based on the class-two felony sexual assault enhancer, which requires the jury to find beyond a reasonable doubt that the defendant "physically aided or abetted" the principal in the sexual assault. In this case, the word "physically" was omitted from the charge; it was omitted from the jury interrogatory defining the enhancer; and the court did not instruct the jury on the elements that constitute the enhancer. Although this is not structural error, it is, in my view, plain error requiring reversal. Hence, I respectfully dissent.

The majority reasons that the only evidence presented at trial that the defendant aided or abetted the principal in the sexual assault was physical in nature. The victim testified that the defendant physically restrained him, and the "would-be-rescuer" (Munsaihan) testified that the defendant physically fought with him to prevent his rescue attempt. Therefore, the majority reasons that any evidence the jury used to find aiding or abetting must have been physical. Maj. op. at 1020. The majority's interpretation of the evidence and the jury's verdict is reasonable. However, evidence was presented to the jury that conflicted with this view of the evidence described by the majority. The record supports multiple evidentiary theories of what occurred in the apartment, any one of which the jury may have believed and used to return its verdicts. Hence, I conclude there is a reasonable possibility that had the interrogatory asked the jury whether it found beyond a reasonable doubt that the defendant "physically aided or abetted" the principal, the jury would have answered differently.

The defendant was charged with various crimes as a complicitor concerning the sexual-assault victim and an additional charge of menacing against Munsaihan. With respect to the sexual-assault victim, the defendant was charged with, among other things, sexual assault "through the actual application of physical force or physical violence," the lesser-included offense of sexual assault "by means of sufficient consequence," menacing the sexual assault victim with a deadly weapon, using a deadly weapon during the commission of the sexual assault, and conspiracy to commit sexual assault. The jury convicted the defendant of sexual assault by means of sufficient consequence and conspiracy.

The jury acquitted the defendant of sexual assault through the application of physical force or physical violence, of menacing the sexual-assault victim with a deadly weapon, and of using a deadly weapon during the commission of the sexual assault. The victim testified that the defendant restrained his hands during the sexual assault and also brought a knife into the bathroom when he was being attacked. In closing, the prosecution argued that the defendant held a knife to the victim during the sexual assault. By their acquittals, the jury rejected this portion of the victim's testimony as well as the prosecution's theory that the defendant held a knife to threaten the victim during the sexual assault.

The only other testimony concerning whether the defendant physically aided or abetted the sexual assault was that of Mun-

saihan. He testified that the defendant prevented him from stopping the sexual assault by fighting with him and threatening him with a knife. However, on cross-examination, Munsaihan admitted making an earlier statement that he fought with the defendant because the defendant accused him of cheating during a chess game. This prior inconsistent statement came in as substantive evidence, under section 16–10–201, C.R.S. (2010) (a prior inconsistent statement "is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which his testimony and the inconsistent statement relate"). This statement constitutes substantive evidence of a fight unrelated to the sexual assault of the victim.

In addition, the prosecution introduced the defendant's statements to the police, wherein the defendant stated that he and Munsaihan had a physical fight, but that he was sleeping in another room during the entire sexual assault.

Thus, the trial evidence supported at least three different versions of the fight between the defendant and Munsaihan and the incident in the apartment. The jury found the defendant guilty of menacing Munsaihan with a deadly weapon. This verdict indicates that the jury believed that the defendant fought with Munsaihan. However, there is no way to know which of these three versions of the fight the jury found credible.

Because the jury acquitted the defendant of using or threatening a deadly weapon during the commission of the sexual assault, we know the jury did not credit some aspects of the victim's testimony or Munsaihan's testimony that linked the defendant's use or threat of a knife to the sexual assault. There is no way to know what facts the jury used to support its verdict that the defendant aided or abetted the principal in committing the sexual assault by means of sufficient consequence or in conspiring to commit sexual assault. More importantly, there is no way to fathom how the jury would have responded to the interrogatory if it had been asked whether it found that the defendant "*physically* aided or abetted" the principal when he committed the sexual assault.

Because the facts supported multiple theories of what happened in the apartment on the day of the sexual assault, there is a reasonable possibility the inclusion of the word "physically" in the special enhancer interrogatory would have affected the jury's answer. I believe the erroneous omission of the word "physically" from the interrogatory amounts to plain error. I would reverse the defendant's conviction of the class-two felony sexual assault and remand this case for resentencing. Hence, I respectfully dissent.

I am authorized to state that Justice MARTINEZ joins in this dissent.