Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2019 CO 64**

**No. 17SC147, *Garcia v. People*—Plain Error—Statutory Interpretation—Sentence Enhancers.**

In this case, the supreme court considers an alleged instructional error where the jury instruction at issue tracked the language of the model jury instruction that existed at the time of trial.  The supreme court holds that simply following model jury instructions doesn't avoid plain error.  However, the supreme court concludes that any error regarding the instruction at issue here doesn't require reversal because the defendant failed to show that any error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the defendant's convictions.

The supreme court also holds that the force sentence enhancer in section 18-3-402(4)(a), C.R.S. (2018), that elevates sexual assault from a class 4 felony to a class 3 felony, doesn't require proof of a mens rea.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 64**

**Supreme Court Case No. 17SC147**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA2117

**Petitioner:**

Juvenal Onel Garcia,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Affirmed**
*en banc*
June 24, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Ned R. Jaeckle, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
William G. Kozeliski, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     A restraining order prohibited defendant Juvenal Onel Garcia from contacting C.G. Almost two years after the issuance of the restraining order, Garcia allegedly attempted to sexually assault C.G. Based on events related to that criminal episode, a jury convicted Garcia of first degree burglary, attempted sexual assault, unlawful sexual contact, third degree assault, violation of a protection order, and obstruction of telephone service.

¶2     Garcia appealed, raising two unpreserved claims: (1) the trial court improperly instructed the jury regarding the sexual assault charge; and (2) the trial court improperly instructed the jury regarding the force sentence enhancer related to his attempted sexual assault conviction.

¶3     Because the alleged errors weren't preserved at trial, they are subject to plain error review. *See Tumentsereg v. People*, 247 P.3d 1015, 1019 (Colo. 2011). This means that Garcia's convictions won't be overturned unless at least one error was "both obvious and substantial." *See People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). To constitute a basis for reversal, any such error must have "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Hagos v. People*, 2012 CO 63, ¶ 18, 288 P.3d 116, 121 (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

¶4     A division of the court of appeals affirmed Garcia's convictions. First, it concluded that any error regarding the sexual assault instruction wasn't obvious because the instruction matched "the Model Jury Instructions that existed at th[e] time" of trial. *People v. Garcia*, 2017 COA 1, ¶ 10, __ P.3d __. Next, the division concluded that because a

2

published court of appeals opinion refuted Garcia's contention regarding the sentence enhancer, any instructional error wasn't obvious, and thus wasn't plain. *Id.* at ¶ 26.

¶5 Having agreed to review the judgment of the division, we consider: (1) whether the division incorrectly held that an instructional error is not plain if it tracks the model jury instruction existing at the time of trial; (2) whether plain error should be assessed at the time of trial or the time of direct appeal; and (3) whether the sentence enhancer requires proof of the mens rea "knowingly."

¶6 We conclude that the division erred in holding that simply following the model instructions avoids plain error. But, for different reasons, we agree that any error regarding the sexual assault instruction doesn't require reversal. We do so because Garcia failed to show that any error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of Garcia's convictions. Because we resolve this issue based on lack of prejudice, we need not reach the question of whether the obviousness of an error should be assessed at the time of trial or the time of direct appeal. We also conclude that the force sentence enhancer doesn't include a mens rea requirement, and, therefore, there was no error with respect to that instruction.

¶7 Accordingly, we affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶8 Garcia and C.G. met in middle school, married when C.G. turned 18, and have two children together. In 2010, they separated, and in August 2010, a protection order was issued prohibiting Garcia from contacting C.G. However, Garcia, C.G., and their children

continued to participate in some family outings together, and Garcia would occasionally babysit their children.

¶9     On the night of April 12, 2012, Garcia had agreed to babysit the children in C.G.'s home.  But he arrived hours late.  C.G. testified that Garcia was drunk when he arrived, so she told him to leave.  Garcia left, taking C.G.'s car.  He didn't return for several hours, prompting C.G. to report her car stolen to the police.

¶10    Around 4:00 a.m., Garcia returned and entered the apartment using a key he had taken with him.  Garcia and C.G. both testified that a physical altercation ensued.

¶11    C.G. testified that, when Garcia returned with the car, she told him to leave.  But Garcia didn't leave.  Instead, she testified, he pulled her pants, ripped her underwear, held her down, and attempted to penetrate her.  But she successfully fought him off.

¶12    Garcia argued consent.  He testified that he fell asleep in C.G.'s home after returning with the car and awoke to C.G. shaking him; she attacked him and then they "both ended up on the bed," where he believed they were going to have consensual sex; they "both ended up naked" and made sexual contact, but he stopped the encounter before any penetration occurred.

¶13    The jury found Garcia guilty of first degree burglary, attempted sexual assault, unlawful sexual contact, third degree assault, violation of a protection order, and obstruction of telephone service. The trial court sentenced him to concurrent terms of ten years for first degree burglary, ten years to life for attempted sexual assault, and ten years to life for unlawful sexual contact.

4

¶14 Garcia appealed. As relevant here, he argued (1) that "the trial court erred by failing to apply the 'knowingly' mens rea to the 'caused submission' element of the offense[] of . . . attempted sexual assault" and (2) that the trial court erred in elevating his attempted sexual assault conviction to a class 4 (as opposed to a class 5) felony "because the jury did not find that he knowingly used force to cause submission." *Garcia*, ¶ 4.

¶15 A division of the court of appeals unanimously affirmed Garcia's convictions. *Id.* at ¶ 48. It concluded that any error with respect to the attempted sexual assault instruction wasn't obvious because the instruction matched "the Model Jury Instructions that existed at th[e] time" of trial. *Id.* at ¶ 10. With respect to the sentence enhancer, the division observed that a published court of appeals opinion, *People v. Santana-Medrano*, 165 P.3d 804, 807 (Colo. App. 2006), considered the same issue and held that the sentence enhancer doesn't require proof of a mens rea. *Garcia*, ¶ 25. Because a published opinion explicitly rejected Garcia's contention, the division concluded that any error wasn't plain error because it wasn't obvious. *Id.* at ¶ 26.

¶16 Garcia petitioned this court for certiorari.[1]

---

[1] We granted certiorari to address the following issues:

1. [REFRAMED] Whether the court of appeals erred in holding than an instructional error is not plain under the plain error standard if the erroneous instruction tracks the model jury instruction existing at the time of trial.

2. [REFRAMED] Whether the court of appeals erred in holding that an instructional error is not plain even though the error was plain at the time of direct appeal.

5

## II. Analysis

¶17 First, we address Garcia's contention that the trial court committed reversible plain error when it gave the jury a sexual assault instruction that didn't apply the "knowingly" mens rea to the "caused submission" element. Second, we examine whether the "knowingly" mens rea applies to the force sentence enhancer. We conclude that any error regarding the sexual assault instruction doesn't require reversal and that the force sentence enhancer doesn't require proof of a mens rea.

### A. The Sexual Assault Instruction

¶18 The trial court gave the jury a sexual assault instruction that didn't explicitly tell the jury to apply the "knowingly" mens rea to the "caused submission" element of the attempted sexual assault offense.[2] *See id.* at ¶¶ 5–6. Garcia argues that this constitutes

---

3. [REFRAMED] Whether by consolidating the first- and second-degree sexual assault statutes into a single statute in 2000, the General Assembly intended the circumstances specified in section 18-3-402(4), C.R.S. (2017) to no longer require proof of the mens rea "knowingly" in order to elevate sexual assault to a class three felony.

[2] The instruction stated:

The elements of the crime of sexual assault are:

1. That the defendant,

2. in the State of Colorado at or about the date and place charged,

3. knowingly, inflicted sexual penetration, or sexual intrusion, on a person, and

4. caused submission of the person by means of sufficient consequence reasonably calculated to cause submission against the person's will.

6

reversible plain error. The division disagreed, concluding that any error wasn't obvious because the instruction matched "the Model Jury Instructions that existed at th[e] time" of trial. *Id.* at ¶ 10.[3]

¶19 We conclude that following a model jury instruction doesn't automatically avoid plain error. However, we conclude that the sexual assault instruction here doesn't

---

[3] After the trial, the model instruction changed to make it more clear that the mens rea modifies each conduct element. It now states:

> The elements of the crime of sexual assault (submission against will) are:
>
> 1.  That the defendant,
>
> 2.  in the State of Colorado, at or about the date and place charged,
>
> 3.  knowingly
>
> 4.  inflicted sexual intrusion or penetration on a person, and
>
> 5.  caused submission of the person by means of sufficient consequence reasonably calculated to cause submission against the person's will.
>
> [6.  and that the defendant's conduct was not legally authorized by the affirmative defense[s] in Instruction[s] ___.]
>
> After considering all the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you should find the defendant guilty of sexual assault (submission against will).
>
> After considering all of the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you should find the defendant not guilty of sexual assault (submission against will).

COLJI-Crim. 3-4:01 (2018).

require reversal because there is no reasonable possibility that any error contributed to Garcia's conviction.

### 1. Plain Error

¶20 Because the two alleged errors are unpreserved, Garcia's convictions will not be overturned unless any error was plain. *See Tumentsereg*, 247 P.3d at 1019.

¶21 To constitute plain error, an error must be "both obvious and substantial." *Miller*, 113 P.3d at 750. To require reversal, such error must "so undermine[] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 18, 288 P.3d at 121 (quoting *Wilson*, 743 P.2d at 420). In other words, we must "determine whether a reasonable possibility exists that [any] error contributed to [the] conviction." *People v. Lozano-Ruiz*, 2018 CO 86, ¶ 5, 429 P.3d 557, 578.

### 2. Simply Following Model Instructions Doesn't Avoid Plain Error

¶22 The division concluded that any error regarding the sexual assault instruction wasn't plain because the instruction matched "the Model Jury Instructions that existed at th[e] time" of trial. *Garcia*, ¶ 10. We disagree. As the preamble of the model instructions made clear at the time of Garcia's trial, the model instructions weren't "approved as accurate reflections of the law" and were merely "intended as helpful resource material." Preface, COLJI-Crim. (2008). They are not a safe harbor that insulates instructional error from reversal.

¶23 We demonstrated as much in *Auman v. People*, 109 P.3d 647 (Colo. 2005). In *Auman*, we considered an instruction that failed to track the precise language of the felony-

murder statute. *Id.* at 660. The division below concluded "that the trial court's failure to properly instruct the jury . . . did not constitute plain error because the instruction followed the recommended language of the Colorado Criminal Jury Instruction." *Id.* at 655. We agreed that the error wasn't reversible, but on different grounds. *See id.* at 661. Instead of relying on the language of the model instruction, we reasoned that, despite any error, the instruction's language "was well within the comprehension of the jury." *See id.* at 660. By departing from the reasoning of the division below, we implied that tracking the model instruction wasn't enough to avoid plain error. To the extent we have never said as much explicitly, we do so now.

### 3. Any Error Doesn't Require Reversal Because It Didn't Undermine the Fundamental Fairness of the Trial

¶24 While we disagree with the division's reasoning, we still agree that the sexual assault instruction didn't constitute reversible plain error. We conclude instead that any error didn't undermine the fundamental fairness of the trial, *see Hagos*, ¶ 18, 288 P.3d at 121, because there's no reasonable probability that any error contributed to Garcia's conviction, *see Lozano-Ruiz*, ¶ 5, 429 P.3d at 578.

¶25 The elemental instruction effectively communicated the "knowingly" mens rea to the jury. "A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." § 18-1-501(6), C.R.S. (2018). "A person acts "-'knowingly' . . . , with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." *Id.* The trial court instructed the jury that the

9

defendant must have "caused submission of the person by means of sufficient consequence reasonably calculated to cause submission against the person's will." *Garcia*, ¶ 6. So, regardless of whether the trial court adequately instructed the jury that the defendant must knowingly cause submission, it did instruct the jury that the defendant must use means "reasonably calculated to cause submission." And because "calculated" means (as relevant here) "[u]ndertaken after close consideration of the probable outcome" or "[p]lanned so as to achieve a specific purpose; deliberate," *Calculated*, Black's Law Dictionary (10th ed. 2014), one can't make a reasonably calculated action unknowingly. *See People v. Smith*, 638 P.2d 1, 5 n.7 (Colo. 1981) (observing that "the phrase 'of sufficient consequence reasonably calculated' [to cause submission against the victim's will] clearly implies that the actor must be aware that his or her conduct is sufficient in character and degree to be likely to cause nonconsensual submission"); *People v. Komar*, 2015 COA 171M, ¶ 42, 411 P.3d 978, 987 ("The reasonable calculation component indicates that defendant must have actively considered that his conduct would overcome [the victim's] will not to engage in sexual intercourse with him.").

¶26    Additionally, whether Garcia attempted to *knowingly* cause submission was never directly called into question; Garcia put forward an unrelated consent defense. In essence, he argued that he never acted to cause submission *at all*. The record demonstrates that the conviction resulted from a rejection of Garcia's consent defense — not from any confusion about whether Garcia needed to *knowingly* cause submission.

¶27    Given the similarity of the "reasonable calculation" element and the mens rea requirement, and the fact that whether Garcia knowingly caused submission was never

10

at issue, we conclude that there's no reasonable possibility that any instructional error contributed to Garcia's conviction. *See Lozano-Ruiz*, ¶ 5, 429 P.3d at 578. Therefore, any error didn't undermine the fundamental fairness of the trial. *See Hagos*, ¶ 18, 288 P.3d at 121.

¶28 Because we conclude that any error doesn't require reversal, we need not consider whether it was "obvious." *See People v. Miller*, 113 P.3d at 750. Thus, we don't reach the question of whether plain error should be assessed at the time of trial or the time of direct appeal.

## B. The Sentence Enhancer

¶29 Sexual assault is generally a class 4 felony. *See* § 18-3-402(2), C.R.S. (2018). However, if a defendant "causes submission of the victim through the actual application of physical force or physical violence," it's elevated to a class 3 felony. *See* § 18-3-402(4)(a). "[C]riminal attempt to commit a class 3 felony is a class 4 felony." § 18-2-101(4), C.R.S. (2018). Thus, if in the course of attempting to commit sexual assault, a defendant "causes submission of the victim through the actual application of physical force or physical violence," he commits a class 4 felony. *See* §§ 18-2-101(4), 18-3-402(4)(a).

¶30 The trial court instructed the jury that, if Garcia was found guilty of attempted sexual assault, the jury "should determine whether he attempted 'to cause submission of the person through the actual application of physical force or physical violence.'" *Garcia*, ¶ 6. The jury found that he did, and Garcia was convicted of class 4 attempted sexual assault.

¶31 Garcia argues that the jury should have been instructed that the mens rea of "knowingly" applied to the sentence enhancer and that this omission constituted reversible plain error. The division found no plain error, *see Garcia*, ¶ 26, noting that a published court of appeals opinion, *Santana-Medrano*, 165 P.3d at 807, considered this very issue and held that the sentence enhancer doesn't require proof of a mens rea, *Garcia*, ¶ 25.

¶32 We go one step further and conclude that *Santana-Medrano* was correct. In other words, we conclude that the force sentence enhancer doesn't include a mens rea requirement, and, therefore, the trial court didn't err.

### 1. Standard of Review

¶33 We review issues of statutory construction de novo. *See Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 40, __ P.3d __.

### 2. The Force Sentence Enhancer Doesn't Include a Mens Rea Requirement

¶34 In *Santana-Medrano*, a division of the court of appeals addressed an argument identical to the one before us—that "the trial court erroneously instructed the jury on the sexual assault [force enhancer] because the physical force or violence instruction did not require the jury to determine that the mens rea 'knowingly' applied to that finding." *Santana-Medrano*, 165 P.3d at 806. The *Santana-Medrano* division found no error. *See id.*

¶35 First, the division noted that "[s]tatutory provisions that raise the felony level of an offense are generally regarded as sentence enhancement provisions, not elements of

the charged offense." *Id.* at 806–07 (citing *Vega v. People*, 893 P.2d 107, 113 (Colo. 1995); *Armintrout v. People*, 864 P.2d 576, 580 (Colo. 1993)).

¶36 Next, the division considered our opinion in *Whitaker v. People*, 48 P.3d 555 (Colo. 2002). In *Whitaker*, we considered whether the General Assembly intended the sentencing provisions of section 18-18-405, C.R.S. (2006), to include mens rea requirements. *See id.* Because the statute separated the elements of the offenses from the factors resulting in differing levels of punishment, we concluded that the "statutory structure demonstrate[d] the General Assembly's intent to separate sentencing factors, such as drug type and quantity, from the elements of the crime." *Id.* at 558. Thus, we concluded, unlike elements, the sentencing factors don't require proof of a mens rea. *Id.* at 559.

¶37 The *Santana-Medrano* division concluded that the sexual assault sentence enhancers are analogous to those in *Whitaker*. *See Santana-Medrano*, 165 P.3d at 807. The division observed that the substantive elements of sexual assault are enumerated in section 18-3-402(1)(a), whereas the force sentence enhancer is enumerated in section 18-3-402(4). *See id.* The division deduced that "[t]he provisions of [section] 18-3-402(4) do not set forth separate offenses or define an additional substantive element of the crime of sexual assault." *Id.* Therefore, no proof of a mens rea is required to elevate the level of a defendant's conviction. *Id.* "Instead, the plain language of the statute, read as a whole, demonstrates the General Assembly's intent that those offenders who use physical force or violence during a sexual assault should be punished more severely than offenders who do not." *Id.* at 807–08. Accordingly, the division concluded that the trial court didn't err in instructing the jury. *Id.* at 808.

13

¶38 We agree with the *Santana-Medrano* division's reasoning. We conclude on the same basis that the force sentence enhancer doesn't include a mens rea requirement. Thus, we affirm the division's judgment here. The trial court didn't err with respect to the sentence enhancer instruction.

### III. Conclusion

¶39 We conclude that the division erred in holding that simply following the model instructions avoids plain error. But, for different reasons, we agree that any error regarding the sexual assault instruction doesn't require reversal. We do so because Garcia failed to show that any error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of Garcia's convictions. Because we resolve this issue based on lack of prejudice, we need not reach the question of whether the obviousness of an error should be assessed at the time of trial or the time of direct appeal. We also conclude that the force sentence enhancer doesn't include a mens rea requirement, and, therefore, there was no error with respect to that instruction.

¶40 Accordingly, we affirm the judgment of the court of appeals.