23CA0089 Peo v Thompson 05-01-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA0089
Mesa County District Court No. 21CR1260
Honorable Matthew D. Barrett, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Jason Thompson,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

_____

Philip J. Weiser, Attorney General, Brock J. Swanson, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Robin Rheiner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, David Jason Thompson, appeals the judgment of conviction entered after a jury found him guilty of violation of bail bond conditions and violation of a protection order. We affirm.

## I. Background

¶ 2 As of August 2021, Thompson and his ex-wife, the victim in this case, were separated. Thompson had been charged in another case with felony menacing, among other offenses. In connection with that case, Thompson was subject to a mandatory protection order forbidding him from communicating with his ex-wife — who was the named victim in that case as well — except for contact to discuss bills and to set up and make custody exchanges of their son at a law enforcement facility. Thompson's appearance bond in that case prohibited any contact with the victim.

¶ 3 One day that month, Thompson was supposed to pick up his son for a planned exchange but told the victim he couldn't make it because he'd been called into work. The victim took the child with her to a male friend's house for the evening. Thompson texted the victim multiple times that evening. His messages were angry and pointed, sometimes referring to their child but also directing various slurs and accusations at the victim and her male friend. Later that

1

evening, the victim and her friend called 911 when they spotted Thompson's truck on the street. The responding officer spoke with the victim, who recounted the events leading up to the 911 call and showed the officer the text messages from Thompson.

¶ 4 Thompson was charged with and tried on counts of retaliation against a witness or victim, stalking, violation of bail bond conditions, and violation of a protection order. As part of his defense, Thompson argued that his portion of the text conversation either concerned his son or arose at least partially out of concern for his son's well-being. Thompson was convicted of violation of bail bond conditions and violation of a protection order but was acquitted of the other two offenses.

¶ 5 On appeal, Thompson contends that (1) the evidence is insufficient to support his conviction for violation of bail bond conditions; (2) the trial court erred by introducing evidence about his previous charge for felony menacing; and (3) the trial court erred by entering a conviction for felony violation of bail bond conditions when the jury was only instructed on the elements of a misdemeanor offense. We address each contention in turn.

## II.     Sufficiency of the Evidence

¶ 6     Thompson first contends that the prosecution presented insufficient evidence to support his conviction for violation of bail bond conditions.  We disagree.

### A.     Standard of Review and Applicable Law

¶ 7     We review sufficiency of the evidence issues de novo, considering whether the evidence before the jury was "sufficient in both quantity and quality to sustain a defendant's conviction." *McCoy v. People*, 2019 CO 44, ¶ 63.  In doing so, we employ a substantial evidence test, under which we evaluate "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *People v. Donald*, 2020 CO 24, ¶ 25 (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).  We must afford the prosecution the benefit of every reasonable inference that may be fairly drawn from the evidence but cannot allow a verdict to be supported by guessing, speculation, or conjecture.  *Id.* at ¶ 19.

¶ 8     At the time of the offense, the violation of bail bond conditions statute made it an offense to "knowingly violate[] the conditions of [a] bail bond" after release on bond following an arrest for a felony offense.  § 18-8-212(1), C.R.S. 2021.  To establish this offense, the prosecution must prove that the defendant had actual knowledge of the bond condition; it's not enough that they merely should've been aware of the condition.  *Donald*, ¶ 37.  However, knowledge may be inferred from circumstantial evidence.  *Id.*  A person acts knowingly when they are "aware that [their] conduct is of such nature or that such circumstance exists."  § 18-1-501(6), C.R.S. 2024.

## B.    Application

¶ 9     Thompson contends that the prosecution failed to present sufficient evidence to establish that he actually knew about the bond conditions from the earlier case.  More specifically, he argues that (1) the evidence didn't establish that he was the person who signed the bond paperwork and (2) no other evidence established his knowledge of the conditions listed on that paperwork.

¶ 10    As to Thompson's first argument, we conclude that the evidence was sufficient to establish his identity as the person who was charged in the earlier case and who signed the appearance

4

bond form.  In particular, the following evidence supports such a finding beyond a reasonable doubt:

- The first appearance form from Thompson's earlier case — which the Mesa County Clerk of Court testified was a certified copy of the original court document — indicated that he was eligible for release from jail with bond set at $5,000.

- The court clerk testified that a criminal defendant is required to sign bond paperwork before being released from jail.

- The appearance bond form — which the court clerk testified was a certified copy of the original court document — named "David Jason Thompson" as the defendant and provided a date of birth, address, and telephone number for the defendant.

- The address listed for the defendant on that form matched the address the victim provided at trial for the home she had shared with Thompson.

- That form bore a signature, appearing to be the initials D.J.T., on the line for the defendant's signature.  It

5

also bore a signature on the line for the deputy clerk or sheriff who witnessed the defendant's signature.

- The related protection order — which was also verified as a certified copy of the original court document — bore the same case number; similarly named David Jason Thompson as the defendant; provided the defendant's date of birth, height, weight, and hair and eye color; listed Thompson's ex-wife as the victim; and bore a signature on the line for the defendant similar to the signature on the appearance bond form.

- The victim in this case also testified that Thompson had been the defendant and she had been the listed victim in the earlier case.

¶ 11 Collectively, this evidence sufficiently establishes that Thompson was the person charged in the earlier case and that he signed the appearance bond form. *See Gorostieta v. People*, 2022 CO 41, ¶ 27 (evidence linking a defendant to a prior criminal case may include, among other things, evidence specifically identifying the defendant, a physical description from the prior case that can be compared to the defendant in the present case, and testimony of

people with personal knowledge positively identifying the defendant as being the same person from a prior case).

¶ 12    Although the court clerk acknowledged that she didn't personally witness Thompson signing the appearance bond form, she verified the certified court records and explained the process whereby defendants must sign bond paperwork before they are released from jail on bond.  And the evidence indicated that Thompson had been released from jail on a $5,000 bond, that someone signed the appearance bond form in what appeared to be Thompson's initials, and that a deputy clerk or sheriff witnessed Thompson's signature.

¶ 13    Moreover, other evidence linked the defendant named in the earlier court documents to Thompson — not just his full name and date of birth (which the jurors could find matched his approximate age at trial) but also his height, weight, and hair and eye color (which the jurors could also compare to his appearance).  The documents further listed the same victim — Thompson's ex-wife — and the same address the victim indicated she'd shared with Thompson.  And the victim testified that Thompson was the defendant in the earlier case.

¶ 14     As to Thompson's second argument, we conclude that the evidence was sufficient to establish that he was aware of the bond conditions.  The two-page appearance bond form includes a checked box next to the language "No Contact with **LISTED ADDRESS OR NAMED VICTIM**" in the section on additional conditions of the bond.  And the protection order, which also bears Thompson's signature and similarly forbids most contact with the victim, provides the following warning:

> *** *ALL CONDITIONS OF THIS PROTECTION ORDER ARE ALSO CONDITIONS OF THE DEFENDANT'S BOND.* ***

The court clerk also testified that at a criminal defendant's first appearance, they are advised of the conditions of their bond.  And one of Thompson's texts to the victim referenced her potentially putting "the father of [her] kid in jail over some f***k boy" — which the victim perceived as Thompson acknowledging that his texts about her friend could potentially violate the protection order but which could also have pertained to a potential violation of the bail bond conditions.  Together, this evidence supports a finding that Thompson was aware of the bond conditions.  *See Donald*, ¶ 41

(signed bond paperwork in that case was sufficient to establish the defendant's knowledge of the conditions of his bond).

¶ 15    In sum, the evidence, viewed in the light most favorable to the prosecution, was both substantial and sufficient to support the jury's conclusion beyond a reasonable doubt that Thompson was guilty of knowingly violating his bail bond conditions.[1]

III.    Admission of Evidence Regarding the Prior Felony Charge

¶ 16    Thompson next contends that the trial court plainly erred by admitting irrelevant and prejudicial evidence about the prior charged offense — felony menacing — rather than limiting the evidence to the mere fact that the prior charge was a felony. Again, we disagree.

A.    Standard of Review and Applicable Law

¶ 17    The Colorado Rules of Evidence favor the admissibility of relevant evidence unless the evidence is prohibited by the constitution, a statute, or a rule. *People v. Hood*, 2024 COA 27,

---

[1] Thompson suggests that the knowing element of the offense for violation of bail bond conditions may have been mischaracterized by the prosecutor and inaccurately described in the jury instructions. We don't consider either of these arguments because Thompson doesn't develop them. *See People v. Duran*, 2025 COA 34, ¶ 14 n.3.

¶ 19; CRE 402.  In criminal cases, evidence is relevant if, among other things, the evidence makes it more or less probable that the charged criminal act occurred.  *People v. Clark*, 2015 COA 44, ¶ 17; *see also* CRE 401.  Yet even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  CRE 403.

¶ 18    We review a trial court's evidentiary rulings for an abuse of discretion, which occurs when a court's rulings are manifestly arbitrary, unreasonable, or unfair or are based on an incorrect understanding of the law.  *People v. Owens*, 2024 CO 10, ¶ 105.

¶ 19    Where, as here, a defendant challenges evidence they didn't contemporaneously object to at trial, any error isn't reversible unless it is plain.  *See People v. Snelling*, 2022 COA 116M, ¶ 33.  An error is plain when it is both obvious and substantial.  *Hagos v. People*, 2012 CO 63, ¶ 18.  To be obvious, an error must be "so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of an objection."  *People v. Oliver*, 2020 COA 97, ¶ 40 (quoting *People v. Conyac*, 2014 COA 8M, ¶ 54).  This

10

generally means the error must have contravened a clear statutory command, a well-settled legal principle, or Colorado case law. *Id.* To be substantial, an error must be "seriously prejudicial," such that it "so undermine[d] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *People v. Pollard*, 2013 COA 31M, ¶ 43 (first quoting *People v. Ujaama*, 2012 COA 36, ¶ 43; and then quoting *Hagos*, ¶ 14).

## B. Application

¶ 20     As we've noted, the bail bond conditions statute in effect at the time in question made it an offense to knowingly violate the conditions of a bail bond after release on bond following an arrest for a felony offense. § 18-8-212(1), C.R.S. 2021. Thus, the charge for violation of bail bond conditions required proof that Thompson had been released on bond relating to a felony charge.

¶ 21     Before trial, the defense filed a request that the prosecution's witnesses — particularly the victim — be admonished not to discuss any facts relating to Thompson's other pending case. In particular, that motion requested that witnesses not "discuss[] . . . any prior actions, words, or other behaviors that Mr. Thompson

may have engaged in other than what happened in this case" and not "talk of Mr. Thompson's character, such that it paints him a light as being an abusive or bad person." The trial court approved the request, and the prosecutor indicated at the beginning of trial that the victim had been given that admonishment.

¶ 22    However, Thompson takes exception to two instances during the trial where he claims the prosecution presented information beyond the mere fact that he was out on bond for a felony charge.

¶ 23    First, Thompson points to the victim's testimony offering a few details about the event that led to the earlier charge. Specifically, he points to the following exchange on direct examination:

> Q. Without going into any details, just yes or no, did that prior incident that resulted in the protection order, did that involve [the same male friend] in some way?
>
> A. No. Well, I don't — he wasn't there at the incident, so, no. But it was a — I had just gotten back from California, and that's what it was referencing, or what set it off, I guess.
>
> Q. Okay. And you'd gone to California with [the male friend]?
>
> A. [The male friend.] Uh-huh (affirmative).

¶ 24    Second, Thompson points to the appearance bond form admitted at trial. Although some portions of the document were redacted, the listing of the charge for "menacing – felony" was not. And during her testimony, the court clerk briefly mentioned that charge:

> Q.    [D]oes the appearance bond indicate the charge for which the defendant was arrested?
>
> A.    Yes.
>
> Q.    What is that, the first charge there?
>
> A.    Felony menacing.

¶ 25    We decline to decide whether the trial court erred in admitting this evidence because we conclude that, even if it did err, the error was not plain.

¶ 26    As to obviousness, we cannot say that any error was so clear cut that the trial court should've known, in the absence of an objection, that the evidence had to be excluded. *See Oliver*, ¶ 40. Certainly, Thompson hasn't pointed to any clear statutory command, well-settled legal principle, or Colorado case law expressly precluding this type of evidence. *See id.*

¶ 27    Indeed, the challenged evidence doesn't include the kind of specific details about Thompson's prior actions, words, other behaviors, or character that the defense sought to avoid in its pretrial request for admonishment of witnesses. The references in the appearance bond form and the court clerk's testimony named only the offense alleged, and not any of the underlying facts. And when the prosecutor asked the victim for limited details regarding the earlier incident, his questions centered on confirming that the prior incident involved the same male friend. Both immediately before and immediately after those questions, the prosecutor referred to Thompson's text about potentially being jailed over "some f**k boy" and asked the victim whether she believed that reference was to the same male friend. So it would've been clear from the questioning that the prosecutor was simply trying to establish that the references in the texts were to the victim's male friend, and not to Thompson.

¶ 28    Turning to substantiality, we conclude that any error in admitting the challenged evidence did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Pollard*, ¶ 43.

¶ 29   As we've indicated, very little detail was provided about the earlier charged offense.  And what little was provided was fleeting.  *See People v. Perez*, 2024 COA 94, ¶ 44 ("Inadmissible evidence will inflict less prejudice if it appears only in a fleeting reference.").  Moreover, the evidence on the two charges on which Thompson was convicted in this case — violation of bail bond conditions and violation of a protection order — was overwhelming, given the ample evidence that Thompson was aware of the conditions of the bail bond and protection order and the admission of photographs of his various texts to the victim.  *See People v. Martinez*, 2020 COA 141, ¶ 76 ("[A] trial court's error 'does not normally constitute plain error . . . where the record contains overwhelming evidence of the defendant's guilt.'" (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005))).  And the jury acquitted Thompson of the other two charges, indicating that it wasn't improperly swayed by the challenged evidence.  *See Snelling*, ¶ 37.

¶ 30   For all these reasons, we discern no plain error in the trial court's admission of this evidence.

## IV.  Jury Instructions

¶ 31    Finally, Thompson contends that the trial court committed structural error by entering a conviction for felony violation of bail bond conditions when the jury was only instructed on the elements of a misdemeanor offense.  We are not persuaded.

### A.    Standard of Review and Applicable Law

¶ 32    When a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing the element, that error is generally subject to harmless error or plain error analysis rather than structural error standards.  *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001).  Structural error in jury instructions arises only when the error "affect[s] the very framework in which the trial proceeds and render[s] the trial fundamentally unfair."  *Tumentsereg v. People*, 247 P.3d 1015, 1018 (Colo. 2011).

¶ 33    Because we discern no structural error in this case, and because the alleged error was not preserved, we apply plain error review.  As applied to jury instructions, plain error requires "not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed

16

to [the defendant's] conviction." *Miller*, 113 P.3d at 750 (quoting *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001)).[2]

B.   Application

¶ 34   Thompson's argument is premised on the difference between *felony* and *misdemeanor* violation of bail bond conditions.

¶ 35   As we've indicated, the statute in effect at the time in question made it an offense to knowingly violate the conditions of a bail bond while out on bond for a felony charge. § 18-8-212(1), C.R.S. 2021. Such an offense was a class 6 felony. *Id.*

¶ 36   A separate section of the statute made it an offense to knowingly violate the conditions of a bail bond while out on bond for a misdemeanor charge. § 18-8-212(2), C.R.S. 2021. Such an offense was a class 3 misdemeanor. *Id.*

¶ 37   Thompson argues that the instructions provided to the jury only required a finding of the elements of the misdemeanor — not

---

[2] We reject the People's argument that Thompson waived this issue when his counsel failed to object to the court's proposed elemental instruction. There is no indication in the record that defense counsel was aware of, but intentionally declined to object to, the claimed error. *See People v. Rediger*, 2018 CO 32, ¶ 3 ("[M]ere acquiescence to a jury instruction does not constitute a waiver without some record evidence that the defendant intentionally relinquished a known right.").

17

the felony — offense.  Specifically, he points out that the elemental instruction given to the jury only required a finding that he "was accused . . . of menacing," and not that he was accused of *felony* menacing (or any other felony).  *See* § 18-3-206, C.R.S. 2024 (menacing may be either a felony or a misdemeanor offense, depending on the circumstances).  Thus, he argues, the jury was not instructed to and did not find that the prosecution proved the elements of the felony offense of violation of bail bond conditions.

¶ 38    Thompson compares this case to *Medina v. People*, in which our supreme court found structural error when the parties proceeded at trial as if the defendant was accused of accessory as a class 5 felony offense yet the trial court later sentenced him for a class 4 felony offense.  163 P.3d 1136, 1140-42 (Colo. 2007).  But, as the court explained in that case, the error wasn't simply that the jury instructions misdescribed an element of the class 4 offense.  *Id.* at 1140.  Instead, although the charging document was unclear as to whether the defendant was being charged with the class 4 or the class 5 offense, the prosecution indicated at the beginning of the trial that it was pursuing the class 5 offense; the prosecution's evidence and argument at trial pertained only to that class 5

offense, without attempting to prove the additional facts necessary to establish the class 4 offense; and the defense's theory at trial was consistent with the elements of the class 5 offense. *Id.* at 1138-41. Under those circumstances, the supreme court concluded that "there was no jury verdict on the charge on which the trial court sentenced [the defendant]." *Id.* at 1141.

¶ 39 Here, however, Thompson points only to a potential discrepancy in the instructions. There is no question that the prosecution charged Thompson with felony violation of bail bond conditions based on violation of the bond conditions associated with his previous arrest for felony menacing. The prosecution also presented evidence that one of Thompson's previous charges was for felony menacing. And there is no indication that anyone was confused at any point during the trial about the fact that the subject charge was for felony violation of bail bond conditions relating to a previous felony charge.

¶ 40 Thus, this case is far more similar to *Tumentsereg*, in which our supreme court concluded that an unobjected-to omission in a jury instruction didn't constitute plain error. 247 P.3d at 1018-20. The defendant was convicted of class 4 sexual assault, which the

trial court elevated to class 2 sexual assault based on a jury interrogatory finding that the actor (another person whose conduct the defendant was charged with under a complicity theory) was aided or abetted in the commission of the assault by one or more others. *Id.* at 1017-18 (citing § 18-3-402(1)(a), (2), (5)(a)(I), C.R.S. 2010). On appeal, the defendant pointed out that the jury interrogatory used to elevate the offense only required a finding that the actor was "aided or abetted" by one or more persons, whereas the statute required a finding that the actor was "*physically* aided or abetted" by one or more persons. *Id.* at 1018 (emphasis added) (quoting § 18-3-402(5)(a)(I), C.R.S. 2010).

¶ 41  The *Tumentsereg* court initially distinguished *Medina* and declined to find structural error. *Id.* at 1019. The court explained that it had treated the error in *Medina* as structural "not simply because the jury was mis-instructed concerning the definition of class-four-felony accessory" but "because [the jury] was actually instructed on the definition of, and both parties operated at trial under the assumption that the defendant had been charged with, class-five-felony accessory." *Id.* But, in contrast to *Medina*, the charging document in *Tumentsereg* "clearly charged the defendant

20

with the class-two-felony version of sexual assault committed when the actor is aided or abetted by one or more others" and "the parties in th[e] case operated throughout with the understanding that the interrogatory in question was intended to distinguish class-two- from . . . class-four-felony sexual assault." *Id.*

¶ 42 Then, applying plain error review, the court determined that "the evidence presented to the jury failed to provide any basis for finding that the defendant aided or abetted another person to commit sexual assault other than by doing so physically." *Id.* Thus, the court held, "there was no reasonable possibility in this case that the trial court's omission contributed to the defendant's conviction and sentence for class-two-, as distinguished from class-four-, felony sexual assault." *Id.* Accordingly, the court discerned no plain error. *Id.* at 1019-20.

¶ 43 The same holds true in this case. The parties operated throughout the case — from the charging document through the entirety of the trial — with the understanding that Thompson was accused of felony violation of bail bond conditions relating to a previous charge of felony menacing. There was evidence at trial that Thompson had previously been charged with a felony (felony

21

menacing). And there was no basis for the jury to have found that the violation of bail bond conditions charge related to something other than the bond conditions arising from a former felony charge. Accordingly, there is no reasonable possibility that the omission of the word "felony" in the verdict form could have contributed to Thompson's conviction for felony, rather than misdemeanor, violation of bail bond conditions. *See id.*; *see also Miller*, 113 P.3d at 750 (an erroneous jury instruction normally doesn't constitute plain error if the issue is not contested at trial).

## V. Disposition

¶ 44    The judgment is affirmed.

JUDGE FOX and JUDGE LUM concur.